Robert Carey (SBN 011186)
John DeStefano (SBN 025440)
Tory Beardsley (SBN 031926)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
johnd@hbsslaw.com
toryb@hbsslaw.com

Brett L. Slavicek (SBN 019306)
Justin Henry (SBN 027711)
**THE SLAVICEK LAW FIRM** 5500 North 24th Street
Phoenix, Arizona 85016
Telephone: (602) 285-4435
Facsimile: (602) 287-9184
Email: brett@slaviceklaw.com
justin@slaviceklaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ethan Gromek and Crystal Gromek, individually and as statutory beneficiaries of Christopher Gromek, deceased, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Farm Bureau Property and Casualty Insurance Company, an Iowa corporation,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## I. INTRODUCTION

1. Plaintiffs bring this action to establish that Farm Bureau Property and Casualty Insurance Company's ("Farm Bureau") standard auto policy fails to comply with A.R.S. § 20-259.01(H). Arizona law provides that when an insured holds two or more UM/UIM coverages—whether on multiple vehicles under a single policy or under multiple policies issued by the same insurer—the insured is entitled to combine (stack) uninsured motorist ("UM") and underinsured motorist ("UIM") (collectively, "UM/UIM") coverage limits unless Farm Bureau complied with the anti-stacking requirements of A.R.S. § 20-259.01(H). Farm Bureau's standard auto policy failed to comply with A.R.S. § 20-259.01(H). The result of the violation is clear: many insureds who were seriously injured in auto accidents have not received the stacked UM/UIM benefits to which they were entitled.

2. The law on these issues is well-developed and clear. Under Arizona law, auto insurers must permit their customers to stack policies or coverages for UM/UIM motor vehicle accident claims unless the insurers comply with two simple requirements: Insurers must both (1) "expressly and plainly limit stacking in the policy" with "unambiguous language plainly disavowing the possibility of stacking," and (2) "satisfy the notice requirement [of A.R.S. § 20-259.01(H) by] informing the insured of their 'right to select one policy or coverage' either in the policy itself or in writing to the insured within thirty days after the insurer is notified of the accident." *Franklin v. CSAA Gen. Ins. Co.*, 532 P.3d 1145, 1148, ¶ 11 (Ariz. 2023) (quoting A.R.S. § 20-259.01(H)). Here, Defendant failed to meet the second requirement: it failed to notify Plaintiffs and the Class that stacked coverage was available, and it refused to stack the multiple UM/UIM coverages available to Plaintiffs and the Class, whether provided under a single policy or across multiple Farm Bureau policies, resulting in underpayments.

3. "Stacking" arises "when an insured obtains coverages for several vehicles and then attempts to claim multiple [UM or] UIM coverages for the same accident." *Am.*

*Family Mut. Ins. Co. v. Sharp*, 277 P.3d 192, 196, ¶ 15 (Ariz. 2012).[1] UM/UIM coverage is personal coverage—it covers the person, not the vehicle. Multiple UM/UIM coverages exist when multiple vehicles are insured under a single policy, and equally when an insured holds UM/UIM coverage under more than one policy issued by the same insurer. *See Franklin*, 532 P.3d at 1146, 1151, ¶¶ 2, 24. Unless the insurer complies with A.R.S. § 20-259.01(H), those coverage limits can be added together to provide "stacked" benefits for a single claim. *Id.* In other words, each separate coverage limit can be accessed to provide benefits for the same covered loss. When stacking coverages, the aggregated (stacked) coverage limit is determined by adding together each vehicle's UM or UIM coverage.

4. The requirement that insurers inform each insured claimant of their right to select one policy or coverage empowers insured claimants to make timely and informed choices about coverage. It ensures that insured claimants are fully aware of their options and rights, particularly in complex situations involving multiple policies and coverages.

5. Arizona law also provides that, when an insured is injured and presents a first-party claim, the duty of good faith and fair dealing requires an insurer to meet several crucial duties: For example, it must (1) reasonably investigate the claim and applicable law; (2) work to find all available coverage for the insured; (3) identify and fully disclose all pertinent benefits, coverages, and policy provisions; (4) inform the insured accurately about available coverages and benefits; (5) avoid misrepresenting or concealing any pertinent benefits, coverages, or policy provisions; (6) avoid requesting a release that extends beyond the subject matter that gave rise to a claim payment; (7) construe the policy in accordance with known law; (8) treat its insured fairly and reasonably; and (9) give the insured's interests equal consideration.[2]

---

[1] *See also Rashid v. State Farm Mut. Auto. Ins. Co.*, 787 P.2d 1066, 1068 n.2 (Ariz. 1990) (defining "stacking" as "combin[ing] the coverages of a single policy or multiple policies issued by a single insurer").

[2] *See, e.g.*, Ariz. Admin. Code § 20-6-801(D)(1) ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an

6. When handling UM/UIM claims involving multiple UM/UIM coverages, whether under one policy or several, Defendant breached each of these duties as well as the insurance contracts themselves.

7. Regarding Plaintiffs and Class Members, Defendant was responsible for fully disclosing, applying, and paying UM/UIM coverage up to the stacked limits required by Arizona law and the properly construed insurance policy, but failed to do so. Having failed to qualify for the right to prohibit stacking, having failed to disclose, apply, and pay stacked benefits to its insureds, and having failed to notify the insured of the insured's right to select one policy or coverage, Defendant breached its contractual, good faith, and legal duties to its customers, including underpaying the benefits due.

8. Plaintiffs, at all relevant times, were insureds under a Farm Bureau policy, and they bring this action in part under (a) 28 U.S.C. §§ 2201 & 2202 for a declaratory judgment regarding their rights and the rights of the Class under the applicable auto insurance policy or policies ("the Farm Bureau Policy" or "the Farm Bureau Policies") and (b) state law.

## II. PARTIES

9. Plaintiffs Ethan Gromek ("Plaintiff Ethan") and Crystal Gromek ("Plaintiff Crystal") are residents and citizens of Arizona.

10. Plaintiffs are the surviving children of Christopher Gromek, deceased, and are statutory beneficiaries within the meaning of A.R.S. § 12-612(A). They bring this action on behalf of all statutory beneficiaries of the decedent.

---

insurance policy or insurance contract under which a claim is presented."); *Nardelli v. Metro. Grp. Prop. and Cas. Ins. Co.*, 277 P.3d 789, 800, ¶¶ 54-55 (Ariz. App. 2012); *Sarchett v. Blue Shield of Cal.*, 729 P.2d 267, 275-77 (Cal. 1987) ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *State Farm Mut. Auto. Ins. Co. v. Shuman*, 370 N.E.2d 941, 956-57 (Ind. App. 1977) (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

11. Under the "Who Is An Insured" provision of the Auto Uninsured and Underinsured Motor Vehicle Module, an "insured" includes "[a]ny other 'person' entitled to recover damages because of 'bodily injury' to an 'insured.'" Christopher Gromek was an insured under that Module as a named insured. Plaintiffs, as statutory beneficiaries entitled to recover damages because of the bodily injury and death of Christopher Gromek, are insureds under the Farm Bureau Policy (as used herein, the "Farm Bureau Policy" or the "Farm Bureau Policies" means any personal auto policy issued to an Arizona insured by Farm Bureau).

12. Defendant Farm Bureau is an insurance company incorporated under the laws of Iowa, with its principal place of business in West Des Moines, Iowa, but which is duly licensed and authorized to administer and sell insurance in the state of Arizona.

## III. JURISDICTION AND VENUE

13. Plaintiffs are citizens of Arizona. Defendant is a citizen of Iowa, where it is incorporated and maintains its principal place of business. Therefore, complete diversity exists.

14. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy (including the $150,000 value of the disputed claim for stacked UM/UIM coverages, plus bad faith damages and attorneys' fees) exceeds $75,000, exclusive of costs and interest, and Plaintiffs and Defendant are citizens of different states. This Court also has jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members, the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity exists.

15. Venue is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to claims described herein occurred within this district and the Farm Bureau Policies were issued in this district, and Defendant does business in this district.

16. Whenever it is alleged in this Complaint that Farm Bureau did any act or thing, it is meant that Farm Bureau and its agents, officers, servants, employees or representatives did such act or thing and when such act or thing was done, it was done with full authorization or ratification of Farm Bureau or was done in the normal and routine course and scope of business, or with the actual, apparent and/or implied authority of Farm Bureau and its officers, agents, servants, employees or representatives. Specifically, Farm Bureau is liable for the actions of its affiliates, officers, agents, servants, employees, and representatives.

## IV. GENERAL ALLEGATIONS AS TO ARIZONA LAW

### A. Overview

17. This case is about Farm Bureau's failure to stack UM/UIM coverage limits where an insured holds two or more such coverages and Farm Bureau failed to comply with A.R.S. § 20-259.01(H). The stacked limit is the sum of the UM or UIM limit of each applicable coverage—whether on multiple vehicles insured under a single policy, on multiple Farm Bureau policies, or both.

18. Thus, this Complaint addresses the availability of stacking under A.R.S. § 20-259.01(H): Whether the separate UM/UIM coverage limits should have been combined (stacked) for insureds who held two or more such coverages, under one policy or several. *Franklin*, 532 P.3d at 1146-47, 1151, ¶¶ 2, 24. Subsection (H) is not self-executing; insurers may prohibit stacking only if they satisfy the strict statutory conditions of that provision. *Id.*; *Sharp*, 277 P.3d at 196. If Subsection (H) is not satisfied, the insurer must disclose, apply, and pay stacked benefits across all applicable coverages.

19. Insureds presenting UM/UIM claims were not notified of or given stacked benefits, resulting in underpayments because their claims were improperly capped at the single limit of UM/UIM coverage.

**B. If an insurer fails to comply with the notice requirements of A.R.S. § 20-259.01(H), it must stack multiple UM/UIM coverages, whether provided under one policy or several.**

20. Insurance policy provisions that diverge from the explicit terms of A.R.S. § 20-259.01 are void. *See, e.g.*, *Cundiff v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 270 (Ariz. 2008); *Sharp*, 277 P.3d 192, at 193, 197. The UMA has "a remedial purpose and must be construed liberally in favor of coverage." *Id.* at 197, ¶ 18 (quoting *Taylor v. Travelers Indem. Co. of Am.*, 9 P.3d 1049 (Ariz. 2000)).

21. Subsection (H) of A.R.S. § 20-259.01, as amended in 1997, allows insurers to draft their policies to prohibit stacking of UM/UIM coverages but prescribes a strict method for doing so. Insurers wishing to prohibit stacking must "expressly and plainly limit stacking in the policy" with "unambiguous language plainly disavowing the possibility of stacking." *Franklin*, 532 P.3d at 1148, ¶ 11. In addition, they must either draft the policy to "contain a statement that informs the insured of the insured's right to select one policy or coverage as required by this subsection," or absent such policy language, "within thirty days after the insurer receives notice of an accident,... notify the insured in writing of the insured's right to select one policy or coverage." *Id.* at 1148, ¶¶ 10-11 (quoting A.R.S. § 20-259.01(H)).

22. Because Subsection (H) uses the word "may," it is not self-executing; rather, it "permits" or "authorizes" an insurer to take affirmative steps so that only one "policy or coverage" applies. *Sharp*, 277 P.3d at 196; *see also Franklin*, 532 P.3d at 1148, ¶ 10 ("Insurers may limit stacking, but insurers must satisfy the statute's notice requirement.") (internal quotation omitted); *State Farm Mut. Auto. Ins. Co. v. Lindsey*, 897 P.2d 631, 633 (Ariz. 1995) ("this provision is not self-executing because its wording is merely permissive"); *Hanfelder v. GEICO Indem. Co.*, 422 P.3d 579, 581, ¶ 8 (Ariz. App. 2018) ("Subsection (H) is not self-executing; insurers must include policy language incorporating its limitations.").

23. The phrase "multiple policies or coverages" in Subsection (H) applies only "when an insured obtains coverages for several vehicles and then attempts to claim multiple UIM coverages for the same accident." *Sharp*, 277 P.3d at 196, ¶ 15.

24. Subsection (H) is not exclusively limited to circumstances where multiple policies exist; it applies to multiple policies or coverages, and therefore to the stacking of UM/UIM coverages under both multiple policies and a multi-vehicle insurance policy. *Franklin*, 532 P.3d at 1153, ¶ 34; *see also Heaton v. Metro. Grp. Prop. & Cas. Ins. Co.*, No. 2:21-CV-00442-PHX-SRB, 2021 WL 6805629, at *7 (D. Ariz. Oct. 19, 2021) ("[M]ultiple coverages exist when multiple vehicles are insured under a single policy that contains UM/UIM coverage.").

25. Under Subsection (H), an insurer cannot prevent stacking if it fails to include plain, express, and unambiguous policy language that prohibits and disavows the possibility of stacking. *Franklin,* 532 P.3d at 1148 ¶¶ 10-11.

26. There is a second element to limit stacking under Subsection (H): "insurers must . . . satisfy the notice requirement [by] informing the insured of their 'right to select one policy or coverage' either in the policy itself or in writing to the insured within thirty days after the insurer is notified of the accident." *Id.* at 1148, ¶ 11 (quoting § 20-259.01(H)); *see also Heaton,* 2021 WL 6805629 at *8 ("Having found that [plaintiffs] have multiple UM/UIM coverages under the statute by virtue of insuring multiple vehicles, the Court concludes that both [plaintiffs] may stack their available coverages because [the insurer] did not adhere to the requirements of A.R.S. § 20-259.01(H) to prevent stacking."); *Schwallie v. Am. Family Mut. Ins. Co.*, No. CV-12-00681-PHX-NVW, 2013 WL 4478697, at *2 (D. Ariz. Aug. 20, 2013) (denying insurer's effort to avoid stacking UIM coverages, and stating: "Failure to notify an insured of his right to select which policy should apply in an anti-stacking provision in writing, either in the policy itself or within 30 days of any claim, prevents an insurer from limiting [stacking] coverage under Arizona law.").

### C. Plaintiffs' insurance contracts are governed by the implied covenant of good faith and fair dealing.

27. The coverage issues raised here are governed by an obligation implied in every insurance contract in Arizona—a covenant of good faith and fair dealing owed to the insured. Under the covenant of good faith and fair dealing, an insurer must deal fairly with an insured, providing fair and honest treatment, and giving in all matters equal consideration to the insured's interests. *See, e.g.*, *Rawlings v. Apodaca*, 726 P.2d 565, 572-73 (Ariz. 1986).

28. Among other things, "[t]he carrier has an obligation to immediately conduct an adequate investigation, act reasonably in evaluating the claim, and act promptly in paying a legitimate claim. It should do nothing that jeopardizes the insured's security under the policy. It should not force an insured to go through needless adversarial hoops to achieve its rights under the policy." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280, ¶ 21 (Ariz. 2000).

29. The duty of good faith and fair dealing, apart from the responsibility to promptly pay covered claims, also "encompasses some obligation to inform the insured about the extent of coverage and his or her rights under the policy and [must] do so in a way that is not misleading." *Nardelli v. Metro. Grp. Prop. and Cas. Ins. Co.*, 277 P.3d 789, 800, ¶ 54 (Ariz. App. 2012) (citing *Rawlings*, 726 P.2d at 572-73).

## V. FARM BUREAU IMPROPERLY REFUSES TO DISCLOSE, STACK, AND PAY THE FULL AMOUNT OF PLAINTIFFS' UIM COVERAGES

30. On October 17, 2025, Jayden Tucker was operating a car that collided with Christopher Gromek, who was a pedestrian in a crosswalk at the intersection of South McClintock Drive and Western Canal in Tempe, Arizona.

31. Mr. Tucker, as indicated in the police report, ran through flashing red lights, hitting Mr. Gromek.

32. Mr. Tucker was negligent in causing the accident and was the sole cause of the accident.

33. As a result of the crash, Christopher Gromek suffered severe injuries that led to his death.

34. Mr. Tucker had only $25,000 in liability insurance applicable to the wrongful death of Christopher Gromek provided by GEICO.

35. Plaintiffs' damages exceed the amount of liability insurance available to Mr. Tucker, who therefore is underinsured as to Plaintiffs. *See* A.R.S. § 20-259.01(G).

36. To protect himself and his family members from uninsured or underinsured tortfeasors, Christopher Gromek purchased UM/UIM insurance from Farm Bureau.

37. At the time of loss, Mr. Gromek was insured under a Farm Bureau Policy (Policy No. 7533884, attached as Exhibit 1). The Farm Bureau Policy insured four vehicles: a 2023 Tesla Model 3 (VIN # 5YJ3E1EA1PF686413), a 2022 Jeep Wrangler (VIN # 1C4HJXDG2NW156836), a 2020 Porsche Macan (VIN # WP1AA2A52LLB11528), and a 2019 Ford F150 (VIN # 1FTEW1EPXKKD13371). Each vehicle's coverage provided UIM benefits of $50,000 per person, $100,000 per accident.

38. The Farm Bureau Policy identifies two named insureds: Christopher Gromek, designated the "first named insured," and Nancy R. Gromek. Under the Policy's General Section, "you" and "your" mean the persons indicated in the Declarations as "named insured." Christopher Gromek and Nancy R. Gromek together constitute the named-insured unit that purchased the UM/UIM coverages at issue.

39. In the "Underinsured Motor Vehicle Coverage" provision of the Auto Uninsured and Underinsured Motor Vehicle Module of Plaintiffs' Policy, Farm Bureau agreed to pay as follows:

> We cover damages for "bodily injury" an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle". The "bodily injury" must be sustained by an "insured", "caused by" an "occurrence" and "arise out of" the operation, maintenance or use of the "underinsured motor vehicle".

Ex. 1, Gromek Policy at 42.

40. On June 14, 2026, Plaintiffs' counsel, The Slavicek Law Firm, wrote a UIM Policy Limits Demand, referencing claim number B198104P00, demanding "payment of all available policy limits of all available coverage." Consistent with Arizona insurance law, the letter specifically requested that Farm Bureau "perform a diligent search of all household policies to determine if additional coverages or policies apply. If additional policies or coverages apply, we demand payment of those limits as well."

41. The demand letter documented Mr. Tucker's liability insurance limits.

42. At that time, Farm Bureau knew that Christopher Gromek had passed away due to his injuries.

43. In other words, Farm Bureau knew that Plaintiffs' damages attributable to the tortfeasor's fault in the accident exceeded the combined limits of the tortfeasor's $25,000 liability coverage and the UIM coverages on the four vehicles insured under the Farm Bureau policy.

44. The Farm Bureau Policy under which Plaintiffs were insured is Farm Bureau's standard form Policy for personal (i.e., non-commercial) auto policies.

45. The Farm Bureau Policy fails to include a statement informing the insureds of their "right to select" one UM/UIM policy or coverage, as the case may be, to any one accident.

46. The UM and UIM coverage sections in the Farm Bureau Policy contain separate provisions applicable to stacking of policies and stacking of coverages.

47. As to stacking of *policies*, the UM and UIM coverage section in the Farm Bureau Policy, states: "If two or more uninsured/underinsured motorist liability policies issued to you by us apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability."

48. As to stacking of *coverages*, the Limits of Insurance provision, paragraph H, of the Auto Uninsured and Underinsured Motor Vehicle Module, states:

> When two or more "autos" are insured ***under this module*** the limits apply separately to each and cannot be stacked, added

> together or combined to determine the amount of insurance available to an injured person from one accident.
>
> Ex. 1 at 43-44 (Emphasis added).

49. Limit of Liability language, standing alone, does not satisfy the requirements of Subsection (H) or preclude stacked UM or UIM coverage. Plainly disavowing stacking satisfies only the first of the two requirements; an insurer must also inform the insured of the right to select one policy or coverage. *See Franklin,* 532 P.3d at 1146, 1148, ¶¶ 2, 10-11; *Lindsey*, 897 P.2d at 633; *Heaton,* 2021 WL 6805629 at *7-8.

50. While the Farm Bureau Policy does include selection language in the General Section of the policy form, that language only applies to selection *among* different coverage modules. No such language appears in the UM/UIM coverage module.

51. This demonstrates that Farm Bureau knew how to provide insureds with the right to select among coverages, but chose not to regarding selection among multiple UM/UIM coverages.

52. The "General Section" of the Farm Bureau Policy states:

> **Other Insurance – This Policy**
>
> If coverage is afforded under more than one ***coverage module*** in this policy for the same loss, only one coverage will apply to the loss. You may select the coverage that is most beneficial to you, but you cannot recover more than once for the same loss.
>
> Ex. 1 at 10 (emphasis added).

53. Farm Bureau's use of "module" dooms any argument that an insured was notified of the right to select among available UM/UIM coverages. When used in the Limits of Insurance Provision, "Module" refers to a specific coverage type. *See supra* at 12, ¶ 48. Throughout the Farm Bureau Policy the term "module" is used to refer to different coverage types. *E.g.* Ex. 1 at 29 ("Auto Medical Payments Module"), 32 ("Damage to Your Vehicle Module"), 42 ("Auto Uninsured And Underinsured Motor Vehicle Module").

54. Thus, the Farm Bureau Policy does not contain any notice of the right to select as to multiple UM/UIM coverages available, whether multiple coverages arise under a single policy or multiple policies.

55. Farm Bureau received notice of Christopher Gromek's October 17, 2025 accident on October 17, 2025—a fact Farm Bureau has conceded in writing. *See* Exhibit 2, February 27, 2026 Letter. The thirty-day period prescribed by A.R.S. § 20-259.01(H) therefore expired on November 16, 2025.

56. Because the Farm Bureau Policy does not notify the insured of the insured's right to select one UM/UIM policy or coverage, the only remaining means of complying with A.R.S. § 20-259.01(H) is to notify the insured in writing of that right within thirty days after the insurer receives notice of the accident.

57. Farm Bureau did not send any such written notice within thirty days. It sent the notice on February 27, 2026, 133 days after it received notice of the accident, and 103 days after the statutory deadline expired.

58. That correspondence, addressed to Christopher Gromek and directed to no other insured, included a "NOTICE CONCERNING SELECTION OF POLICY LIMIT," which stated:

> You purchased either multiple policies insuring at least one vehicle or a single policy insuring multiple vehicles issued by Farm Bureau Property & Casualty Company or Western Agricultural Insurance Company.
>
> If you make a claim for either Uninsured Motorist or Underinsured Motorist benefits arising from the above accident, then only one vehicle's Underinsured Motorist or Uninsured Motorist coverage limit will apply to the claim, regardless of the number of applicable policies, applicable coverages, vehicles insured, persons injured, or number of claims asserted.
>
> Pursuant to Arizona Revised Statute § 20-259.01(H), you have the right to select the one vehicle's Underinsured Motorist or Uninsured Motorist coverage limit to apply to the above accident.
>
> If you make no selection within 30 days, you will have selected the vehicle with the highest limits of insurance.

**Ex. 2**.

59. Because Farm Bureau's written notice was not sent within thirty days after Farm Bureau received notice of the accident, it did not satisfy A.R.S. § 20-259.01(H).

60. Farm Bureau knew of the thirty-day requirement, which appears in plain language in the statute cited in Farm Bureau's own correspondence. And it knew that the selection notice had come well-outside of that period—the very same letter acknowledges a notice of loss 133 days earlier.

61. Having failed to satisfy either method of compliance under A.R.S. § 20-259.01(H), Farm Bureau was not entitled to limit the applicable coverages to a single vehicle's limit, and its assertion to the contrary misrepresented the coverage available under the Policy and failed to disclose additional coverage that was available.

62. That February 27, 2026 letter was addressed solely to Christopher Gromek, who Farm Bureau knew was then deceased. Farm Bureau sent no notice of the right to select one policy or coverage to Nancy R. Gromek, the sole surviving member of the named-insured unit that purchased the coverages, or to any legal representative of Christopher Gromek's estate.

63. Under the Policy's Change/Assignment of Interest provision, Farm Bureau agreed that upon the death of a named insured it would protect as "named insured" any surviving member of the household who is an insured under the Policy and any legal representative acting on behalf of the deceased. Ex. 1, Gromek Policy at 15.

64. The belated February 27, 2026 letter represented to the insured "only one" vehicle's UM/UIM limit would apply, and thereby concealed the stacked benefits then available under the Policy.

65. Based on the foregoing facts, the stacking of Plaintiffs' Underinsured Motorist coverage is permitted. *See* A.R.S. § 20-259.01(H); *Franklin,* 532 P.3d at 1146, 1148, ¶¶ 2, 11; *Heaton,* 2021 WL 6805629 at *5, 7-8; *Schwallie*, 2013 WL 4478697 at *1-

2. When properly determined and then stacked, the available UIM coverages for Plaintiffs as to this accident total $200,000 rather than the $50,000 disclosed by Farm Bureau.

66. On July 13, 2026, Scott Harmon, a BI/Litigation Claims Specialist with Farm Bureau, informed Plaintiffs that Farm Bureau would be tendering limits for the UIM claim.

67. The following day he confirmed that the amount tendered was a single UIM limit of $50,000, on one of Plaintiffs' insured vehicles.

68. Farm Bureau has refused to acknowledge or pay stacked UIM benefits, and has maintained that position in response to Plaintiffs' demand. Plaintiffs have not accepted Farm Bureau's single-limit tender in satisfaction of their claim.

69. Farm Bureau misrepresented and concealed the applicable UIM coverage limits with the intent to deceive Plaintiffs Ethan and Crystal Gromek into accepting a single-vehicle reduced limit.

70. Farm Bureau also knew the Farm Bureau Policy does not contain language informing insureds of their right to select which UM/UIM coverage to apply to an accident.

71. Farm Bureau also knew that, absent such language in the Policy, A.R.S. § 20-259.01(H) required it to provide written notice of the insured's right to select one coverage within 30 days of being notified of the accident—which, in Plaintiffs' case, was October 17, 2025. Despite this requirement, Farm Bureau did not provide any such written notice for over 100 days.

72. Farm Bureau's conduct in failing to disclose coverage, misrepresenting and concealing applicable limits, all while knowing stacked benefits were owed, constitutes bad faith under Arizona law. *See* Ariz. Admin. Code § 20-6-801(D)(1)-(2).

73. Despite invoking A.R.S. § 20-259.01(H), Farm Bureau's form selection letter does not disclose that—because the Farm Bureau Policy does not provide notice of

the right to select among UM/UIM coverages—the statute requires that notice to be provided, in writing, within thirty days after the insurer receives notice of the accident.

74. Nor does the letter disclose that where Farm Bureau failed to timely provide this notice, it would be required to stack multiple UM/UIM coverages under Arizona law.

75. With respect to the foregoing allegations, Farm Bureau failed to identify and fully disclose all pertinent benefits, coverages, and policy provisions; failed to inform the insured accurately about available coverages and benefits; misled its insureds; and misrepresented and concealed pertinent benefits, coverages, or policy provisions.

76. With respect to the foregoing allegations, Farm Bureau failed to work to find all available coverage for the insured; failed to reasonably investigate the claim and applicable law; failed to construe the policy in accordance with known law; failed to treat its insured fairly and reasonably; failed to give the insured's interests equal consideration to its own; and on information and belief, failed to conduct any investigation let alone undertake a reasonable coverage investigation.

77. To comply with Subsection (H), all Farm Bureau had to do was advise its insureds in the Policy or in writing within 30 days after receiving notice of an accident that they have a right to select one UM or UIM coverage. These were simple options, and either action would have precluded stacking the UM/UIM coverages on Class Members' vehicles covered by Farm Bureau.

78. Indeed, Farm Bureau has demonstrated the ease of these options by (1) incorporating selection language into its policy notifying insureds of the right to select among *different* coverage modules and (2) sending an out-of-time selection letter.

79. Farm Bureau failed to avail itself of either option under Arizona law to prohibit stacking, and thus is required to stack the UM/UIM coverages for multiple UM/UIM coverages, whether under one policy or several.

80. Yet, Farm Bureau never disclosed or provided stacked UIM coverages to Plaintiffs or the Class. Farm Bureau, therefore, has denied Plaintiffs and the Class benefits to which they are entitled under the Farm Bureau Policy and Arizona law.

81. As a general practice, Farm Bureau does not disclose or provide stacked UM/UIM coverages to Plaintiffs or Class Members after a covered accident. Farm Bureau failed to pay Plaintiffs and Class Members stacked UM/UIM coverages to which they were entitled.

82. Farm Bureau knew or should have known that its policy interpretation and failures to disclose and pay stacked UM/UIM coverages violated Arizona law.

83. Farm Bureau knew or should have known of the requirements of A.R.S. § 20-259.01(H), which have been in place since 1997.

84. Many other Arizona auto insurers (*e.g.*, Farmers, Bristol West, Progressive, State Farm, GEICO, Auto Owners and United) have drafted their auto policies (including single and multi-vehicle policies) to notify their insureds in writing of the right to select which policy or coverage will apply. For example, the Bristol West policy provides:

> The limit of liability under this Part C is not increased if more than one vehicle is covered under this policy.
>
> In no event shall the limit of liability for two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available as Uninsured Motorist Coverage or Underinsured Motorist Coverage benefits.
>
> If multiple policies or coverages purchased from us by an insured person on different vehicles provide Uninsured Motorist Coverage or Underinsured Motorist Coverage to an accident or claim, then the insured person shall select one of these policies or coverages to apply. Only one coverage selected by the insured person shall apply.

85. Farm Bureau knew or should have known of the efforts by other Arizona auto insurers to comply with A.R.S. § 20-259.01(H).

86. Farm Bureau chose not to follow those practices.

87. Farm Bureau failed, as to Plaintiffs and the Class, to investigate, identify, acknowledge, and disclose the existence of stacked UM/UIM coverages under the Farm Bureau Policies.

88. Farm Bureau and its agents violated Administrative Code § 20-6-801(D)(1) and (D)(2) by failing to investigate, identify, acknowledge, and disclose stacked UM/UIM coverages under the Farm Bureau Policies, and by misrepresenting and concealing stacked UM/UIM coverages.

89. Farm Bureau has nonetheless failed to search and reopen its closed claim files to identify, adjust and pay stacked UM/UIM benefits it owes under Arizona law. Any insured who received the maximum amount of a single UM/UIM policy limit and who had other vehicles or policies providing UM/UIM coverage, whether under a single or multiple Farm Bureau policies, would be entitled to notice of the additional coverage available and doubtless entitled to additional benefits.

90. Farm Bureau's failures are subjectively unreasonable, intentional, and in conflict with well-established Arizona law.

91. Farm Bureau's failures are objectively unreasonable, intentional, and in conflict with well-established Arizona law.

92. Farm Bureau's concealment of its statutory obligation and its actual coverage limits, as well as its unreasonable and unlawful refusal to investigate, identify, acknowledge, disclose and pay stacked UM/UIM coverages have led to underpayments of Plaintiffs' UIM claim as well as the UM/UIM claims of hundreds or thousands of other insureds. As a result, Farm Bureau has paid millions of dollars less for UM and UIM claims than its insureds are entitled to receive under the terms of their standardized policies and Arizona law.

## VI. DEFENDANT'S MISCONDUCT REGARDING UM/UIM LIMITS IS SYSTEMIC

93. Plaintiffs' Farm Bureau Policy is a standardized auto policy with the same or substantially similar provisions in relevant part as the auto policies used by Farm Bureau during the relevant time period.

94. The Farm Bureau Policies do not comply with A.R.S. § 20-259.01(H) because they do not inform the insured claimants of their right to select one UM/UIM coverage as between multiple vehicles insured under the same policy, or on multiple policies, in the event of a covered accident.

95. Farm Bureau, as a standard practice, also did not advise insured claimants of their "right to select one policy or coverage" within thirty days after receiving notice of a covered accident. Upon information and belief, Farm Bureau sent a form letter out to insureds with open claims, notifying them of the right to select, well after the thirty-day period expired, in attempt to correct its failure to comply with the requirements of A.R.S. § 20-259.01(H).

96. While A.R.S. § 20-259.01 has not been amended since 1997, Farm Bureau's form selection letter states: "[w]e must make you aware of a *recent development* in the law that impacts your Underinsured and Uninsured motor vehicle coverage." Ex. 2 (emphasis added). Rather than pay the coverage owed, the insurer further concealed its failures by presenting settled law as a "recent development."

97. Farm Bureau, having failed to avail itself of either option under Arizona law, must stack the UM/UIM coverages for multiple UM/UIM coverages, whether under one policy or several Farm Bureau Policies. *See* A.R.S. § 20-259.01(H); *Franklin*, 532 P.3d at 1146, 1148, ¶¶ 2, 11; *see also Heaton*, 2021 WL 6805629 at *5, 7-8; *Schwallie*, 2013 WL 4478697 at *1-2.

98. Farm Bureau knew or should have known of the requirements of A.R.S. § 20-259.01(H).

99. As a standard practice, Farm Bureau chose not to comply with those requirements.

100. As a standard practice, Farm Bureau failed to adequately investigate and reasonably evaluate stacked UM/UIM coverage to which Plaintiffs and Class members were entitled.

101. As a standard practice, Farm Bureau failed to pay, promptly or otherwise, Plaintiffs and Class Members stacked UM/UIM coverage to which they were entitled.

102. As a standard practice, Farm Bureau did not notify Plaintiffs or any other Class Member that its Policies did not comply with A.R.S. § 20-259.01(H) and that if the required notice was not sent within 30 days of the accident, Farm Bureau would, under Arizona law, owe to its insured claimants stacked UM/UIM coverage.

103. Farm Bureau knew or should have known that its failures to adequately investigate, reasonably evaluate, fully disclose, and promptly pay stacked UM/UIM coverage violated Arizona law.

104. As a standard practice, Farm Bureau did not inform its insureds of the availability of or potential for stacked UM/UIM coverage.

105. On information and belief, Farm Bureau received legal advice as to whether it was complying with Subsection (H) and stacking rules as to private passenger automobile claims in Arizona.

106. On information and belief, Farm Bureau received legal advice on whether it had any obligation to provide stacked UM/UIM coverage in Arizona.

107. On information and belief, Farm Bureau received legal advice that its policy language did not satisfy the notice requirements of Subsection (H).

108. On information and belief, Farm Bureau received legal advice that its failure to give proper notice within 30 days of notice of loss violated Arizona law including Subsection (H).

109. On information and belief, Farm Bureau received legal advice that its failure to pay stacked UM/UIM coverage likely violated Arizona law including Subsection (H).

110. Farm Bureau disregarded the legal advice it received, and failed to pay stacked coverage.

111. Alternatively, Farm Bureau recklessly or willfully failed to investigate, evaluate, and inform itself on Arizona law on stacked UM/UIM coverage as to Plaintiffs and the Class.

112. Farm Bureau engaged in the foregoing standard practices despite knowing, based on legal advice, that stacked UM/UIM coverage was available to its insureds under Arizona law.

113. Farm Bureau affirmatively misrepresented, failed to disclose, and/or concealed the availability of or potential for stacked UM/UIM coverage in communications with UM/UIM claimants.

114. In so doing, Farm Bureau failed, as to stacked UM/UIM coverage, to identify and fully disclose all pertinent benefits, coverages, and policy provisions; failed to inform the insured accurately about available coverages and benefits; misled its insureds; and misrepresented and concealed pertinent benefits, coverages, or policy provisions.

115. Farm Bureau also failed, as to stacked UM/UIM coverages, to work to find all available coverage for the insured; failed to adequately investigate and reasonably evaluate the claim and applicable law; failed to construe the Farm Bureau Policies in accordance with known law; failed to treat its insureds honestly, fairly and reasonably; forced insureds to go through needless adversarial hoops to achieve their rights under the policy; and failed to give the insureds' interests equal consideration to its own.

116. Any insured claimant who received the maximum amount of a single UM/UIM policy limit and who had other vehicles or policies providing UM/UIM

coverage, whether under a single or multiple Farm Bureau policies, has been underpaid and is entitled to damages.

117. Good-faith claims handling required Farm Bureau to implement a standard practice of always informing insured claimants with one or more vehicles with UM/UIM coverage, either on the same policy or separate Farm Bureau policies, and to whom a single limit of UM or UIM coverage is tendered (a) the availability of or potential for stacked UM/UIM coverage under the Farm Bureau Policies, (b) the insurer's practice of paying these claims when asked and supported by evidence, (c) additional monies may be owed to this claimant depending on the facts of their case, and (d) the claimant may submit additional documentation for that purpose, including medical bills and lost income.

118. Farm Bureau does not have any such good-faith standard practices.

119. To the contrary, Farm Bureau had a standard practice of misrepresenting to and concealing from Class Members the potential for stacked UM/UIM coverages under the Farm Bureau Policies.

120. Despite (on information and belief) having paid stacking claims in Arizona and received legal advice on its stacking obligations in this State, Farm Bureau has failed to search and reopen its closed claim files to investigate, evaluate, and pay stacked UM/UIM coverage benefits it owes under Arizona law.

121. Farm Bureau knew or should have known that its standard claims handling practices as to stacked UM/UIM coverages benefits did not comply with Subsection (H).

122. Farm Bureau's actions were unreasonable, intentional, knowing, in reckless disregard of its insureds' rights, and in conflict with well-established Arizona law.

123. Farm Bureau's systemic misconduct described above has led to underpaying Plaintiffs' UIM claim and categorically UM/UIM claims as to all Class Members, and thus also resulted in Farm Bureau paying substantially less for UM and UIM claims than its insureds are entitled to under the terms of their standardized policies and Arizona law.

## VII. CLASS ACTION ALLEGATIONS

124. This action is brought and may properly be maintained as a class action, as it satisfies the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23. Plaintiffs bring all claims herein individually and as a class action (for the Class defined below), pursuant to Rule 23.

125. The Class consists of the following:

> All persons who, from the earliest date provided by law through the date of judgment: (a) were insureds under one or more personal automobile insurance policies, issued in Arizona, by Farm Bureau that together insured two or more vehicles; (b) experienced a covered loss where the insured person received UM or UIM benefits; (c) the UM or UIM benefits were limited to the coverage limits of a single vehicle; and (d) to whom Farm Bureau did not provide written notice of the right to select one policy or coverage within thirty days after the date on which Farm Bureau first received notice of the accident.

126. Excluded from the Class are Defendant, its officers, directors, and employees, the Court, the Court's immediate family, Court staff, and persons who validly and timely exclude themselves from the Class.

127. Plaintiffs are members of the Class.

128. While the exact number of members cannot be determined, on information and belief, the Class consists of at least hundreds of Arizona insureds. The members of the Class are therefore so numerous that joinder of all members is impracticable. The exact number of Class Members can readily be determined by documents produced by Farm Bureau.

129. Class membership is ascertainable from Farm Bureau's own business records. The number of vehicles insured and the applicable UM/UIM limits appear on each policy's declarations page. The date on which Farm Bureau first received notice of the accident, the date any selection notice was mailed, and the amount paid or tendered

appear in Farm Bureau's claim system. No individualized inquiry is required to determine who is a member of the Class.

130. Class Members' injury arises at the time of claims adjustment, when Farm Bureau evaluated and paid the claim against a single vehicle's UM/UIM limit rather than against the stacked limits available under Arizona law. The resulting shortfall is the measure of contract damages for each Class Member.

131. An insurer's incomplete or truncated adjustment file cannot establish that a Class Member sustained no injury. Once Farm Bureau capped its exposure at a single vehicle's limit, it had no reason to continue developing the claimant's damages beyond that figure, and on information and belief it did not do so. The absence of documented damages above a single limit in Farm Bureau's files is therefore a product of Farm Bureau's own truncated adjustment practice, not evidence that damages did not exceed that limit.

132. There are questions of fact and law common to the Class, including the following:

i. Whether the Farm Bureau Policy complies with A.R.S. § 20-259.01(H), such that Farm Bureau may preclude stacking;

ii. Whether Farm Bureau mailed written notice of the right to select one policy or coverage within thirty days after the date on which its records reflect it first received notice of the accident;

iii. Whether Farm Bureau failed to stack UM/UIM coverages;

iv. Whether Farm Bureau knew or should have known its failure to pay stacked UM/UIM coverages violated Arizona law;

v. Whether Farm Bureau recklessly or willfully failed to investigate, evaluate, and inform itself on Arizona law on stacked UM/UIM coverages;

vi. Whether Farm Bureau maintained any system, procedure, or control tied to the thirty-day period prescribed by A.R.S. § 20-259.01(H);

vii. Whether Farm Bureau or its agents systematically failed to fully disclose the availability of or potential for stacked UM/UIM coverages under the Farm Bureau Policies;

viii. Whether Farm Bureau or its agents systematically misrepresented, failed to disclose, and/or concealed the availability of or potential for stacked UM/UIM coverages under the Farm Bureau Policies in communications with insureds;

ix. Whether, through the foregoing practices, Farm Bureau breached its contracts with its insureds;

x. Whether, through the foregoing practices, Farm Bureau breached the implied covenant of good faith and fair dealing;

xi. Whether Farm Bureau's conduct departed from the claim-handling standards reflected in A.R.S. § 20-461, and Arizona Administrative Code § 20-6-801(D)(1) and (D)(2), which evidence the standard of care governing first-party claim handling;

xii. Whether, through the foregoing practice, Farm Bureau caused and will continue to cause harm to its insureds;

xiii. Whether Plaintiffs and the Class are entitled to declaratory relief;

xiv. Whether Farm Bureau's above-referenced conduct as to the Class warrants an award of compensatory damages;

xv. Whether Farm Bureau's above-referenced conduct as to the Class warrants an award of punitive damages; and

xvi. Whether Plaintiffs and the Class are entitled to an award of attorney's fees.

133. Plaintiffs have the same interests in this matter as all other members of the Class, and their claims are typical of those of all members of the Class. Plaintiffs' claims are coincident with and not antagonistic to those of other Class members they seek to

represent. Plaintiffs and all Class members have been harmed by Farm Bureau's common course of conduct as outlined herein. The harm to each Class member was caused by Farm Bureau's wrongful conduct.

134. Plaintiffs are committed to pursuing this action and have retained competent class counsel experienced in insurance litigation and class action litigation. Plaintiffs will fairly and adequately represent the interests of the Class members.

135. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Farm Bureau's actions are generally applicable to the Class as a whole, and Plaintiffs seek, among other things, equitable remedies with respect to the Class as a whole including declaratory relief regarding the terms of the Farm Bureau Policy and its breach, as well as an injunction requiring Farm Bureau to notify Class Members of the availability of stacked policy limits.

136. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

137. Class certification is appropriate in the alternative under Federal Rule of Civil Procedure 23(c)(4), because resolution of two discrete issues—whether the Farm Bureau Policies contain a statement informing the insured of the right to select one policy or coverage, and whether Farm Bureau, having satisfied neither method of compliance under A.R.S. § 20-259.01(H), was entitled to limit UM/UIM benefits to a single vehicle's coverage limits—will materially advance the litigation as to every Class member. Both are resolvable on the standardized Policy forms and Farm Bureau's standardized notice, without reference to any individual claim.

138. Absent a class action, most of the members of the Class will remain ignorant of their rights and/or find the cost of litigating their claims prohibitive. Therefore, they will have no effective remedy. The classwide treatment of common questions of law and

fact conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. Farm Bureau has misrepresented, failed to disclose, and/or concealed the rights of Class members and those Class members will remain ignorant of their potential claims against Farm Bureau unless court-supervised notice is ordered.

139. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions involving the insurance industry. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of other respective Class members and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of other members of the Class.

**FIRST CLAIM FOR RELIEF**
**(DECLARATORY JUDGMENT AS TO THE CLASS)**

140. Plaintiffs incorporate by reference all prior allegations in this Complaint as if fully set forth herein.

141. Plaintiffs and the Class have standing to seek this relief because there is an actual controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 between the parties as to the proper interpretation and enforceability of the Farm Bureau Policies under Arizona law, namely, the application of A.R.S. § 20-259.01(H) to this case, Farm Bureau's obligation to disclose and not misrepresent or conceal the existence of stacked UM/UIM coverages, and whether Plaintiffs and the Class are entitled to stacked UM/UIM coverages.

142. Under the circumstances, Plaintiffs and the Class are entitled to a judicial declaration of their rights under the Farm Bureau Policies, specifically that they are entitled to coverage based on and/or payment of stacked UM/UIM coverages under the Farm Bureau Policies; that Farm Bureau is required to fully disclose and not misrepresent or conceal the availability of or potential for stacked coverages to them; and that Farm Bureau is required to search and reopen its closed claim files to adequately investigate, reasonably evaluate, and promptly pay stacked UM/UIM coverage benefits.

143. This claim arises out of contract and Plaintiffs and the Class therefore are entitled to attorney's fees under A.R.S. § 12-341.01.

**SECOND CLAIM FOR RELIEF**
**(BREACH OF CONTRACT AS TO THE CLASS)**

144. Plaintiffs incorporate by reference all prior allegations in this Complaint as if fully set forth herein.

145. Each Class Member (including Plaintiffs) is a party to, or an insured under, one or more of the standardized Farm Bureau Policies.

146. Farm Bureau breached those contracts by failing to identify, disclose, adjust based on, and/or pay stacked UM/UIM coverage to Plaintiffs and the Class where owed.

147. The Class (including Plaintiffs) have been and continue to be damaged by Farm Bureau's breaches of contract.

148. This claim arises out of contract and Plaintiffs and the Class therefore are entitled to attorney's fees under A.R.S. § 12-341.01.

**THIRD CLAIM FOR RELIEF**
**(BAD FAITH AS TO THE CLASS)**

149. Plaintiffs incorporate by reference all prior allegations in this Complaint as if fully set forth herein.

150. Inherent and implied in the Farm Bureau Policies is a covenant of good faith and fair dealing owed to Plaintiffs and the Class. Under the duty of good faith and fair dealing, an insurer must deal fairly with an insured, giving equal consideration in all matters to the insured's interests as it gives to its own. *See, e.g.*, *Rawlings*, 726 P.2d at 572-73.

151. The tort of bad faith arises when an insurer "intentionally denies, fails to process or pay a claim without a reasonable basis." *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981); *see also Wood v. Liberty Mut. Fire Ins. Co.*, No. CV-11-2380-PHX-GMS, 2012 WL 2798761, at *2 (D. Ariz. July 09, 2012). "The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in

the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Zilisch*, 995 P.2d at 280, ¶ 22. Bad faith can be established by showing "(1) the absence of a reasonable basis for denying benefits, and (2) the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Wood*, 2012 WL 2798761, at *2. In addition, under Arizona law, bad faith can be established by showing that the insurer lacked a "founded belief" for its actions because of an inadequate investigation. *Rawlings*, 726 P.2d at 576.

152. Farm Bureau further breached its duty of good faith and fair dealing by failing to investigate, evaluate, and inform itself about Arizona law on stacked UM/UIM coverage; failing to fully disclose the availability of or potential for stacked UM/UIM coverage under the Farm Bureau Policies; misrepresenting, failing to disclose, and/or concealing the availability of stacked UM/UIM coverage in its communications with the Plaintiffs and Class members, and denying the existence of any such stacked limits.

153. Farm Bureau further breached the duty of good faith and fair dealing by failing to reasonably evaluate its contract obligations and promptly adjust based on and/or pay stacked UM/UIM coverage to Plaintiffs and Class Members.

154. Farm Bureau further breached the duty of good faith when it attempted to conceal its failures by presenting a decades-old requirement as a "recent development" in the law to avoid paying stacked coverages where owed.

155. Farm Bureau did so despite knowing of, recklessly disregarding, or failing to investigate, evaluate, and inform itself of its obligation to do so under Arizona law and considering its failure to comply with Subsection (H).

156. Farm Bureau knew or should have known of Subsection (H)'s requirements and its policies' failure to comply with that statute.

157. The tort of bad faith also arises, independent of a claim denial or failure to pay, when the insurer fails to properly "inform the insured about the extent of coverage

and his or her rights under the policy and do so in a way that is not misleading." *Nardelli*, 277 P.3d at 800, ¶ 54, citing *Rawlings*, 726 P.2d at 572-573. *See also Deese v. State Farm. Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1271 (Ariz. 1992) (Martone, J., concurring in the judgment) (describing *Rawlings* as follows: "In *Rawlings*, the contract claim was for fire insurance under the policy. The bad faith tort claim was for failing to disclose to the insured favorable information which would have helped the insured in a separate dispute with its neighbor. These were wholly different claims and thus Farmers' payment of the contract claim was irrelevant to the assertion of the bad faith tort claim. In that context, the contract claim was not an essential ingredient of the tort claim.") (internal citations omitted)); *Zilisch*, 995 P.2d at 279, ¶ 20 ("if an insurer acts unreasonably in the manner in which it processes a claim, it will be held liable for bad faith without regard to its ultimate merits") (internal quotation omitted).

158. For example: "No insurer shall fail to fully disclose to first-party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented." Ariz. Admin. Code § 20-6-801(D)(1), quoted in *Nardelli*, 277 P.3d at 800, ¶ 55.

159. As a second example: "No agent shall conceal from first-party claimants' benefits, coverages or other provisions of any insurance policy or insurance contract when the benefits, coverages or other provisions are pertinent to a claim." Ariz. Admin. Code § 20-6-801(D)(2), quoted in *Nardelli*, 277 P.3d at 800, ¶ 55.[3]

---

[3] *See also cases cited in Nardelli*, 277 P.3d at 800 ¶ 54: *Sarchett*, 729 P.2d at 275-77 ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *Shuman*, 370 N.E.2d at 956-57 (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

160. As a third example: "No insurer shall request a first-party claimant to sign a release that extends beyond the subject matter that gave rise to the claim payment." Ariz. Admin. Code § 20-6-801(D)(5).

161. Farm Bureau breached the duty of good faith and fair dealing by failing to disclose the availability of or potential for stacked UM/UIM coverage under the Farm Bureau Policies; misrepresenting, failing to disclose, and/or concealing stacked UM/UIM coverage in its communications with Plaintiffs and Class members; and denying the existence of any such stacked limits.

162. Farm Bureau did so, despite knowing of, recklessly disregarding, or failing to investigate, evaluate, and inform itself of its failure to comply with Subsection (H).

163. Farm Bureau, therefore, acted in bad faith toward Plaintiffs and the Class.

164. Plaintiffs and the Class seek as compensatory damages the value of their unpaid stacked UM/UIM coverage benefits under Arizona law.

165. Farm Bureau's conduct as to Plaintiffs and the Class was aggravated, outrageous and it consciously disregarded an unjustifiably substantial risk of significant harm to its insureds who are Class members.

166. Farm Bureau is, therefore, liable to Plaintiffs and the Class for punitive damages, which can be proven with common evidence.

167. This claim arises out of contract and Plaintiffs and the Class therefore are entitled to attorney's fees under A.R.S. § 12-341.01.

## PRAYER FOR RELIEF

THEREFORE, Plaintiffs, both individually and on behalf of the Class, demand a trial by jury on all claims so triable, and respectfully request that the Court (i) certify the proposed Class under Federal Rules of Civil Procedure 23(b)(2), (b)(3), and/or (c)(4) for declaratory relief, injunctive relief, damages, and/or the determination of common issues, (ii) designate Plaintiffs as representatives of the Class, (iii) appoint Robert Carey of Hagens Berman as Class Counsel, and (iv) enter judgment in Plaintiffs' favor against

Farm Bureau including the following relief:

A. A declaratory judgment that Plaintiffs and the Class are entitled to stack UM/UIM coverages for multiple insured vehicles under a single Farm Bureau Policy under A.R.S. § 20-259.01(H), and are entitled to stack UM/UIM coverages for multiple vehicles insured under separate Farm Bureau policies under A.R.S. § 20-259.01(H); that those rights declared under A.R.S. § 20-259.01 exist and must be honored for the rest of the contract term and in any renewal until rectified;

B. An order requiring Farm Bureau to reform the Farm Bureau Policies to conform to A.R.S. § 20-259.01, to notify all Class members of their restored coverage rights, and to search and reopen its closed UM/UIM claim files to identify, adjust, and pay the stacked benefits owed.

C. Compensatory damages for the Class in an amount to be proven at trial.

D. Punitive damages as permitted by law.

E. An award of Plaintiffs' attorneys' fees pursuant to any applicable authority including but not limited to A.R.S. § 12-341.01.

F. Statutory interest pursuant to A.R.S. § 20-462(A) from the date of the first payment until the date of judgment.

G. Costs and expenses incurred herein to the maximum extent permitted by law.

H. Any other pre-judgment and post-judgment interest afforded under the law to the maximum extent permitted.

I. Such other relief as the Court deems just and proper.

Dated: September 22, 2026

Respectfully submitted by,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Robert B. Carey*

Robert B. Carey
John M. DeStefano
E. Tory Beardsley
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
johnd@hbsslaw.com
toryb@hbsslaw.com

THE SLAVICEK LAW FIRM
Brett L. Slavicek
Justin Henry
5500 North 24th Street
Phoenix, Arizona 85016
Telephone: (602) 285-4435
Facsimile: (602) 287-9184
Email: brett@slaviceklaw.com
justin@slaviceklaw.com

*Attorneys for Plaintiffs*

# EXHIBIT 1

FARM BUREAU FINANCIAL SERVICES

THIS IS A TRUE AND CERTIFIED COPY OF THE ORIGINAL POLICY

## Amended Declarations - Place With Your Policy

THIS IS NOT A BILL

**Farm Bureau Property & Casualty Insurance Company**
5400 University Avenue
West Des Moines, Iowa 50266-5997

**First Named Insured**
CHRISTOPHER GROMEK
1793 W SAN ANGELO ST
GILBERT, AZ 85233

**Policy Number** 7533884
Policy Period 12-27-2024 to 12-27-2025
Amended 07-02-2025

**Your Farm Bureau Agent**
CHRISTOPHER TOUSLEY
480-483-8787

## Farm Bureau Member's Choice Policy

**Customer Service** 866-399-3237
**Claims Hotline** 800-226-6383

This declarations is a part of the policy and shows the coverages that are provided during the specified policy period.

**Named Insured(s)**

CHRISTOPHER GROMEK
NANCY R GROMEK

**Summary of Coverage** — **Annual Premium**

Vehicle Coverage .................................................. [redacted]
Property/Liability Coverage ..................................................

**Change Description**

Changed coverages and vehicle information on multiple vehicles

**Policy Discounts**

Property Insurance
Vehicle Claim Free
Multiple Vehicle
Total Account
New Roof
Dwelling Insurance
Conviction Free
SafeRide Rewards™
Protective Devices
Dwelling Age

## Vehicle

**Vehicle Coverage for Household of NANCY R GROMEK**

**2023 Tesla MODEL 3 5YJ3E1EA1PF686413**

| Coverage | Limits | Deductible |
|---|---|---|
| Bodily Injury Liability | $100,000 each person<br>$300,000 each occurrence | |
| Property Damage Liability | $50,000 each occurrence | |
| Auto Uninsured Motor Vehicle | $50,000 each person<br>$100,000 each accident | |
| Auto Underinsured Motor Vehicle | $50,000 each person<br>$100,000 each accident | |
| Auto Medical Payments | $1,000 each person | |
| Collision | Repair or Replacement Cost | $1,000 |
| Comprehensive | Repair or Replacement Cost<br>Full Coverage for Safety Glass | $1,000<br>$0 |
| Emergency Roadside Assistance | $200 each occurrence | |
| Auto Rental Reimbursement | $40 per day/$1,200 each occurrence | |
| Original Equipment Manufacturer Parts | | |
| **Annual Vehicle Premium** | | [redacted] |
| Driveology® Program<br>SafeRide Rewards™ | -$537.40 | |

**2022 Jeep WRANGLER UNLIMITED 1C4HJXDG2NW156836**

| Coverage | Limits | Deductible |
|---|---|---|
| Bodily Injury Liability | $100,000 each person<br>$300,000 each occurrence | |
| Property Damage Liability | $50,000 each occurrence | |
| Auto Uninsured Motor Vehicle | $50,000 each person<br>$100,000 each accident | |
| Auto Underinsured Motor Vehicle | $50,000 each person<br>$100,000 each accident | |
| Auto Medical Payments | $1,000 each person | |
| Collision | Repair or Replacement Cost | $1,000 |
| Comprehensive | Repair or Replacement Cost<br>Full Coverage for Safety Glass | $1,000<br>$0 |
| Emergency Roadside Assistance | $200 each occurrence | |
| Auto Rental Reimbursement | $40 per day/$1,200 each occurrence | |
| **Annual Vehicle Premium** | | [redacted] |
| Driveology® Program<br>SafeRide Rewards™ | -$308.84 | |

**2020 Porsche MACAN WP1AA2A52LLB11528**

| Coverage | Limits | Deductible |
|---|---|---|
| Bodily Injury Liability | $100,000 each person<br>$300,000 each occurrence | |
| Property Damage Liability | $50,000 each occurrence | |
| Auto Uninsured Motor Vehicle | $50,000 each person<br>$100,000 each accident | |
| Auto Underinsured Motor Vehicle | $50,000 each person<br>$100,000 each accident | |
| Auto Medical Payments | $1,000 each person | |
| Collision | Actual Cash Value | $1,000 |

| | | |
|---|---|---|
| Comprehensive | Actual Cash Value | $1,000 |
| | Full Coverage for Safety Glass | $0 |
| Emergency Roadside Assistance | $200 each occurrence | |
| Auto Rental Reimbursement | $40 per day/$1,200 each occurrence | |
| **Annual Vehicle Premium** | | [redacted] |
| Driveology® Program | | |
| SafeRide Rewards™ | -$215.44 | |

**2019 Ford F150 1FTEW1EPXKKD13371**

| Coverage | Limits | Deductible |
|---|---|---|
| Bodily Injury Liability | $100,000 each person<br>$300,000 each occurrence | |
| Property Damage Liability | $50,000 each occurrence | |
| Auto Uninsured Motor Vehicle | $50,000 each person<br>$100,000 each accident | |
| Auto Underinsured Motor Vehicle | $50,000 each person<br>$100,000 each accident | |
| Auto Medical Payments | $1,000 each person | |
| Collision | Actual Cash Value | $1,000 |
| Comprehensive | Actual Cash Value | $1,000 |
| | Full Coverage for Safety Glass | $0 |
| Emergency Roadside Assistance | $200 each occurrence | |
| Auto Rental Reimbursement | $40 per day/$1,200 each occurrence | |
| **Annual Vehicle Premium** | | [redacted] |
| Driveology® Program | | |
| SafeRide Rewards™ | -$344.10 | |

## Property/Liability

| Coverage | Limits | Deductible |
|---|---|---|
| Bodily Injury Liability/Property Damage Liability | $300,000 each occurrence | |
| Medical Payments to Others | $1,000 each person/each occurrence | |
| Liability Loss Assessment | $1,000 each occurrence | |
| Property Loss Assessment | $1,000 | No |

**Insured Location**
1793 W SAN ANGELO ST, GILBERT, AZ 85233-2921
Location Description:

| Coverage | Limits | Deductible/Wind & Hail |
|---|---|---|
| **1995 Dwelling** | $788,800 | $1,000/$1,500 |
| Modified Guaranteed Replacement Cost w/125% Cap | | |
| Special | | |
| Loss of Use - Actual Loss Sustained | 12 months | |
| Ordinance or Law | $1,000 | $1,000 |
| Water Backup of Sewers/Drains | $5,000 | $1,000 |
| Residential Equipment Breakdown | | |
| Service Line | | |
| **Household Personal Property** | $552,300 | $1,000 |
| Replacement Cost | | |
| Special | | |
| Tenant's Loss of Use - Actual Loss Sustained | 12 months | |
| Special Limits of Insurance | | |
| Money and Currency | $200 | |
| Valuable Records | $2,500 | |

| | | |
|---|---|---|
| Watercraft | $2,500 | |
| Trailers | $1,500 | |
| Jewelry/Furs | $1,000 per item/$2,000 per occurrence | |
| Plateware | $5,000 | |
| Firearms | $5,000 | |
| Business Property On Premises | $2,500 | |
| Business Property Off Premises | $1,000 | |
| Electronic Apparatus | $1,000 | |
| Water Backup of Sewers/Drains | $5,000 | $1,000 |
| Contents of Freezer or Refrigerated Unit | $1,000 | No |
| **POOL/BBQ 25 X 25 In Ground Rates** | $48,300 | $1,000 |
| Replacement Cost | | |
| Special | | |
| Cosmetic Damage Restriction Does Not Apply | | |

**Insured Location**
1577 PINERIDGE LN, HEBER, AZ 85928-5960
Location Description: secondary seasonal

| Coverage | Limits | Deductible/Wind & Hail |
|---|---|---|
| **2020 Dwelling** | $430,700 | $1,000/$1,500 |
| Modified Guaranteed Replacement Cost w/125% Cap | | |
| Special | | |
| Loss of Use - Actual Loss Sustained | 12 months | |
| Water Backup of Sewers/Drains | $5,000 | $1,000 |
| Residential Equipment Breakdown | | |
| Service Line | | |
| **Household Personal Property** | $301,600 | $1,000/$1,500 |
| Replacement Cost | | |
| Special | | |
| Tenant's Loss of Use - Actual Loss Sustained | 12 months | |
| Special Limits of Insurance | | |
| Money and Currency | $200 | |
| Valuable Records | $2,500 | |
| Watercraft | $2,500 | |
| Trailers | $1,500 | |
| Jewelry/Furs | $1,000 per item/$2,000 per occurrence | |
| Plateware | $5,000 | |
| Firearms | $5,000 | |
| Business Property On Premises | $2,500 | |
| Business Property Off Premises | $1,000 | |
| Electronic Apparatus | $1,000 | |
| Water Backup of Sewers/Drains | $5,000 | $1,000 |
| Contents of Freezer or Refrigerated Unit | $100 | No |
| **Annual Property/Liability Premium** | | [redacted] |

## Policy Forms & Endorsements

| | | | |
|---|---|---|---|
| PKXX.J0001.0510 | PKAZ.SGENL.0422 | PKAZ.SGENS.0510 | PKAZ.SVEHI.0123 |
| PKAZ.MVLIA.0123 | PKAZ.MANMP.0123 | PKAZ.MVDAM.0123 | PKAZ.MAUMU.0123 |
| PKAZ.SLIAB.0420 | PKAZ.MPLIA.0919 | PKAZ.SPROP.0124 | PKAZ.MDWLG.0124 |
| PKAZ.MGOOS.0924 | PKAZ.MHHPP.0124 | PKAZ.EP009.0623 | PKXX.EP016.0922 |
| PKXX.EV013.0123 | | | |

# Farm Bureau Member's Choice

ONE INSURANCE POLICY
TAILORED TO MEET YOUR INDIVIDUAL NEEDS
Vehicle • Property • Liability • Umbrella

PLEASE READ YOUR POLICY CAREFULLY.
It is a legal contract between you and us.

IMPORTANT – In case of loss or accident, call our toll-free number (1-800-226-6383), or notify your Farm Bureau agent as soon as possible.

FARM BUREAU FINANCIAL SERVICES
Farm Bureau Property & Casualty Insurance Company - A Stock Company
5400 University Avenue • West Des Moines, IA 50266

# FARM BUREAU PROPERTY & CASUALTY INSURANCE COMPANY
# (A STOCK COMPANY)

## Mutual Conditions

A. **Membership**
While this policy is in force, the first named insured named in the Declarations is a member of Farm Bureau Mutual Holding Company and is entitled to vote at all meetings of the members of said Company, and shall be entitled to such dividends and distributions as declared by the Board of Directors in accordance with the law.

B. **Non-Assessable**
This policy is non-assessable.

This policy is signed at West Des Moines, Iowa on behalf of FARM BUREAU PROPERTY & CASUALTY INSURANCE COMPANY by our Chairman and Secretary. It is countersigned on the Declarations page by our authorized representative.

Chairman

Dennis J. Presnall
Secretary

## Insuring Agreement

In return for payment of the premium and subject to all the terms and conditions of the policy, we agree to provide the insurance described in this policy and summarized in the Declarations pages.

## About Your Personal Package Policy

### How Your Policy is Organized

A unique feature of your Farm Bureau Member's Choice policy is its modular design. It is organized into sections for each type of insurance you chose, and each section is divided into coverage modules. The modular design allows you to specify the coverages you want and to change your policy quickly without replacing the entire package. When you contact your agent to change coverage, we will provide you with the new coverage module to insert into your package and revised Declarations pages confirming your new coverage.

### Declarations, Endorsements

The Declarations pages at the beginning of your policy are part of your insurance contract. They list or declare the property and liability exposures we agreed to insure. They provide coverage information including deductibles, covered causes of loss, and the amounts of coverage provided.

The Declarations may also list one or more endorsements or amendments which expand or reduce your coverage. The endorsements tailor your policy to your specific needs.

## Definitions

### Definitions Common to Entire Policy

Throughout your policy certain words or phrases are given exact meanings. The definition of we, us and our as well as the definition for you and your are given below.

Other words or phrases that are given exact meanings in the policy are shown with quotation marks whenever they are used. Each section of this policy has a glossary of these definitions, and additional definitions specific to a coverage may be provided at the module level. The following words and phrases are common to the entire policy:

**We, Us and Our Defined**

When we refer to we, us, or our, we mean the <<Farm Bureau Property & Casualty / Western Agricultural>> Insurance Company.

**You and Your Defined**

When we refer to you or your, we mean any "person", "persons" or organizations indicated in the Declarations as "named insured". If the "named insured" is a "person", it includes the spouse of that "person" if a resident of the same household.

**"Actual Cash Value"**

The amount which it would cost to repair or replace damaged property with like kind and quality, less allowance for depreciation and physical deterioration including obsolescence.

**"Aircraft"**

Any device used or designed for flight, except model or hobby "aircraft" not used or designed to carry people or cargo.

**"Arising Out Of"**

Originating from, growing out of or flowing from, and requires only that there be some causal relationship between the loss, injury or damage and the activity or event.

**"Bodily Injury"**

Bodily harm, sickness or disease sustained by a "person", including death resulting from the injury.

**"Caused By"**
The primary or efficient event which produces, brings about or gives rise to the loss, injury or damage.

**"Damages"**
A. The amount required to compensate claimants for loss, injury or detriment for which an "insured" is legally liable. "Damages" includes prejudgment interest the court requires the "insured" to pay. "Damages" do not include payment of fines, penalties, or the costs of complying with injunctive or equitable relief.
B. The amount of "damages" is:
   1. Negotiated by us with the claimant; or
   2. Established by adjudication (lawsuit), arbitration, or a compromise settlement to which we have previously agreed in writing; and
   3. Shall be reduced by any recoveries or salvages which are collected by the claimant.

**"Domestic Violence":**
Any act that is defined as "domestic violence" by Arizona Revised Statute 20-448.

**"First Named Insured"**
The "person" or organization named first in the Declarations.

**"Hovercraft"**
Any self-propelled motorized ground effect vehicle, including, but not limited to, flarecraft and air cushion vehicles.

**"Insured"**
"Insured" can mean different "persons" or organizations, depending on the type of coverage. For that reason "insured" is defined separately in each section of the policy.

**"Livestock"**
Cattle, including bison, buffalo and beefalo; swine; sheep and goats; alpacas and llamas; horses, mules and donkeys, but not race horses, show horses or show ponies.

**"Medical Expenses"**
Unless specifically defined in the module, reasonable charges for necessary:
A. Medical, surgical, x-ray, optical, dental, chiropractic, ambulance, hospital, professional nursing and funeral services; and
B. Eyeglasses, pharmaceuticals, hearing aids and prosthetic devices.

**"Named Insured"**
The "persons" or organizations indicated in the Declarations as "named insureds".

**"Occurrence"**
An accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**"Person"**
A human being.

**"Property Damage"**
Physical injury to or destruction of tangible property, including its loss of use. All such loss of use shall be considered to start at the time of the "occurrence" that caused the "property damage".

**"Smothering"**
Death "caused by" being deprived of oxygen due to a physical blockage of breathing passages or physical interference of breathing.

**"Suffocation"**

Death resulting from:

A. Inadequate oxygen in the air;
B. The presence in the air of toxic gas; or
C. Heat stroke resulting from failure of ventilation equipment or interruption of power to ventilation equipment.

**"Suit"**

A civil proceeding in which "damages" because of "bodily injury", "property damage" or personal injury/advertising injury to which this insurance applies are alleged. "Suit" includes:

A. An arbitration proceeding in which "damages" are claimed and to which the "insured" must submit or does submit with our consent; or
B. Any other alternative dispute resolution proceeding in which such "damages" are claimed and to which the "insured" submits with our consent.

## Deductibles

Your vehicles and other property coverages are subject to the deductible amounts indicated on your Declarations pages. If a Wind & Hail deductible applies, that deductible amount is shown on the Declarations under Wind & Hail. The amount shown under Deductible applies to all other losses unless stated otherwise in the policy. We will only pay that part of each loss that exceeds the applicable deductible.

### Occurrence Deductible

Your Farm Bureau Member's Choice policy features an occurrence deductible. If more than one deductible would apply to any one loss covered by this policy, we use only the highest applicable deductible and waive the others.

### Two Vehicles Insured By Us

In the event of a collision covered under the Damage To Your Vehicle Module, if the collision is with another motorized vehicle insured by us or any of our affiliates or subsidiaries under another policy, we waive the deductible amount applying under your Damage To Your Vehicle Module, up to $250. If both vehicles are insured under this policy, we apply the higher applicable deductible, but waive the first $250.

### Application of Deductible

The deductible is applied to the amount of your loss, not to the limit of coverage.

## Notification of Loss

A. Prompt notice of a loss or claim to which this policy applies is important. To assure prompt claim service, we provide you with a toll free telephone number for reporting claims. This number is on the jacket of your policy and in your Declarations. It is your responsibility to:
   1. Notify us or one of our agents as soon as possible of any accident, "occurrence" or loss. In case of theft or accident, also notify the police or similar authority. Notice to us should include:
      a. The "insured's" name and address;
      b. How, when and where the accident, "occurrence" or loss took place;
      c. The names and addresses of all parties involved including any witnesses and injured "persons"; and
      d. The nature and location of any injury or damage "arising out of" or "caused by" the accident, "occurrence" or loss.
   2. Notify us immediately if a claim or "suit" is made against an "insured". Also send us every demand, notice or claim made and every summons or legal process received.
   3. Notify the credit card or bank card company in case of loss involving credit cards or bank cards.
B. Each section may include additional instructions and conditions regarding your responsibilities when you experience a loss that may be covered under this policy.

## Payment For Loss

### Property and Physical Damage Losses

We will adjust all covered losses to your property and vehicles with you. We will pay you unless some other "person" or entity is named in the policy or is legally entitled to receive payment. Losses will be payable within 15 days after we receive your proof of loss and:

A. We reach agreement with you;

B. There is an entry of a final judgment; or
C. There is a filing of an appraisal award with us.

**Liability Claims**
We have the right to investigate, decide if and how to settle, and choose the attorneys.

**Other Insurance - Other Policies**
Unless otherwise stated, this insurance is excess over any other collectible insurance, guarantee or warranty that applies to the same claim or loss. Exceptions to this provision are medical expenses coverage and goodwill coverage, which are primary unless the coverage module specifically states they are excess coverage.

If other property insurance applies on an excess basis to a covered loss, we will pay only the proportion of the loss that our limit of insurance bears to the total amount of insurance covering the loss.

If other liability insurance applies on an excess basis to "damages" covered under the Liability and Vehicle Sections, we will pay only our share of the loss. Our share is the proportion of a loss or claim that our limit of liability insurance, as indicated in the Declarations, bears to the total amount of insurance covering the loss.

**Other Insurance - This Policy**
If coverage is afforded under more than one coverage module in this policy for the same loss, only one coverage will apply to the loss. You may select the coverage that is most beneficial to you, but you cannot recover more than once for the same loss.

## Your Responsibilities

**Subrogation**
Subrogation means the transfer of your rights of recovery from another party to us. If we make any payment under this policy for other than "bodily injury" or medical payments, we have the right to recover such payments from any liable party who is not an "insured" under this policy. The "person" or organization to or for whom we have made payment shall:

A. Not hurt our rights to recover;
B. Execute any legal papers we need; and
C. When we ask, take action through our representatives to recover our payments. If we request an assignment of rights of recovery for a loss, an "insured" must sign and deliver all related papers and cooperate with us.

An "insured" may waive in writing before a loss all rights of recovery against any "person" or organization. If not waived, we may require an assignment of rights of recovery for the loss to the extent that payment is made by us.

**Reimbursement Agreement**
If we make payment:

A. For other than “bodily injury”; or
B. In excess of $5,000 under the Auto Medical Payment Module

to any "person" or organization from this policy:

C. We are entitled, to the extent of such payments, to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such "person" or organization against any "person" or organization legally responsible for the “damages” for which we made the payment. To the extent of such payment, we shall have a lien on the settlement or judgment, notice of which may be given to the "person" or organization causing the "bodily injury" or “property damage”. We may notify that "person" or organization's agent, insurer, or a court having jurisdiction in the matter.
D. Such "person" or organization shall hold in trust for the benefit of us all rights of recovery which he or she shall have against the "person" or organization who caused the "bodily injury" or “property damage”.
E. Such "person" or organization shall do whatever is proper to secure these rights of recovery and shall do nothing after the loss to compromise these rights.
F. Such "person" or organization shall execute and deliver to us instruments and papers as may be appropriate to secure the rights and obligations established by this provision.

**Recovered Property**
If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is retained by you, the loss payment will be adjusted based on the amount of the salvage value of the property. If the property is recovered by you after we have made payment for the total loss, you must refund to us the salvage value of the recovered property.

If we take possession of the salvage after paying you for your loss, we are entitled to sell the salvage for our benefit.

**Abandonment of Property**
You or any "insured" cannot abandon any property to us unless we agree to accept it, nor to a third party unless we agree.

**Protect the Property**
In case of a loss to which this insurance may apply, it is your responsibility to protect the property from further damage, and to make any repairs that are necessary to protect the property.

You must keep an accurate record of your expenses. We will pay the reasonable costs of protecting the property from further damage. This will not increase the amount of coverage that applies.

**Display the Property**
You must show us the damaged property when we ask.

**Examination Under Oath**
We have the right to examine under oath, as often as we may reasonably require, you, any other "person" who may qualify as an "insured" under this policy, family members and other members of your household individually and separately.

We may also require you and any other "person" who may qualify as an "insured" under this policy to give us a signed statement regarding your ownership interest in the property and the circumstances of the loss, and produce all records and documents we request and permit us to make copies.

**Cooperation With Us**
When asked by us, the "insured" shall assist in making settlements, in securing and giving evidence, in attending and getting witnesses to attend hearings and trials, and agreeing to answer questions under oath. No “insured”, except at his or her own cost, shall voluntarily make any payment, assume any obligation to others, nor incur any expense other than for first aid to others.

## Exclusions

Your policy provides extensive property and liability coverage. However, no policy can provide coverage for all exposures.

While each section and module may have exclusions which apply to a specific type of property, coverage or exposure, the following exclusions apply to all sections and modules. These exclusions apply regardless of any other cause or event contributing concurrently or in any sequence to the loss.

These exclusions apply regardless of whether the excluded cause or event is a direct or indirect cause of loss.

**Communicable Disease**
There is no coverage for any "damages" or "medical expenses" "arising out of" any transmission, or threat of transmission, of any communicable disease or sickness.

**Governmental Action**
There is no coverage for any loss "arising out of" destruction, confiscation or seizure by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss "caused by" fire would be covered under this policy.

**Intentional Acts**

A. There is no coverage for any loss, "damages" or "medical expenses" "arising out of" any act which is expected or intended by the "insured" to cause injury to any "person" or damage to any property belonging to you or others. This applies to any act committed by or at the direction of the "insured" that can reasonably be expected to cause a loss or injury, even if the "insured" failed to, or because of diminished mental capacity, was unable to anticipate the injury or damage. This exclusion applies even if the injury or damage is of a different degree or type than was actually intended or expected.

B. This exclusion does not apply to the following:
   1. Any loss that is otherwise covered under the Property Section of this policy:
      a. If the loss is "caused by" an act of "domestic violence" by another "insured" under this policy and the "insured" who claims the loss did not cooperate in or contribute to the creation of the loss and cooperates in any investigation relating to the loss;
      b. With respect to the interests of an "insured" who did not cooperate in or contribute to the creation of the loss and who cooperates in any claim investigation relating to the loss;

      We may apply reasonable standards of proof for such claims;
   2. Any loss that is otherwise covered under the Vehicle Section of this policy if the act unintentionally results in wrongful conduct; or
   3. Personal Injury/Advertising Injury.

**Molestation or Abuse**

There is no coverage for any "damages" or "medical expenses" "arising out of" any sexual abuse or molestation, harassment, corporal punishment or physical or mental abuse.

**Nuclear Action**

There is no coverage for any loss, "damages" or "medical expenses" "arising out of" nuclear action, meaning nuclear reaction, discharge, radiation, or radioactive contamination, atomic energy or any consequence of any of these. Loss "arising out of" nuclear action is not considered loss by fire, smoke or explosion.

There is also no coverage for loss, "damages" or "medical expenses" "arising out of" any hazardous material, radioactive contamination or waste from any nuclear reactor, nuclear reaction, explosion or drift whether or not such material emanates from nuclear source material, special nuclear material or by-product material.

This exclusion applies even if the release of the contaminated material is sudden, accidental, gradual or arises out of natural means or design.

This exclusion does not apply to any coverage under the Property Section for direct loss by fire resulting from nuclear action.

**Racing or Contests**

There is no coverage exceeding the limits mandated by the financial responsibility law of the state of Arizona for any loss, "damages" or "medical expenses" "arising out of" the ownership, occupancy, operation, maintenance, use, loading, unloading or negligent entrustment of any motorized means of conveyance, whether on the land, on or in water or in the air, while being used in any prearranged, organized or sanctioned racing, pulling, speed or demolition contest or stunting activity or in practice or preparation for any such contest or activity.

**War**

There is no coverage for any loss, "damages" or "medical expenses" "arising out of" any war, whether it is declared or undeclared. War includes civil war, insurrection, rebellion, revolution or warlike acts.

There is no coverage for any military destruction or seizure of any kind.

**Punitive or Exemplary Damages**

There is no coverage for any payment of any punitive or exemplary damages.

## Conditions

While each section and module may have some specific conditions that apply only to that section or module, the following conditions apply to your entire policy:

**Policy Period**

The coverages you chose apply to each accident, "occurrence" and loss that takes place during the policy period. Each policy period begins on the effective date and ends on the expiration date shown in the Declarations. Each policy period begins and ends at 12:01 a.m. Standard Time at the address of the "first named insured".

**Concealment, Fraud, Misrepresentations**

A. By accepting this policy, you agree:
   1. The information shown in the Declarations is accurate and complete;
   2. The information is based upon representations you made to us in your application(s) for this policy; and
   3. We have issued this policy in reliance upon your representations.

B. There is no coverage in case of fraud committed by any "insured" at any time as it relates to this policy. However, this does not apply to any loss that is otherwise covered under the Property Section of this policy if the loss is "caused by" an act of "domestic violence" by another "insured" under this policy and the "insured" who claims the loss did not cooperate in or contribute to the creation of the loss.

C. This insurance is void if you or any other "insured" at any time:
   1. Engage in fraudulent conduct;
   2. Make false statements; or
   3. Intentionally conceal or misrepresent a material fact concerning:
      a. This coverage;
      b. Any vehicles or property covered by this policy;
      c. Your interest in any vehicles or property covered by this policy;
      d. An insurance application, rating, claim or coverage under this policy.

      And such false statements or misrepresentations:
      e. Were fraudulent
      f. Were material either to the acceptance of the risk, or to the hazard assumed by us; and
      g. If given the true facts required by the application for this policy or otherwise, we, in good faith would either have:
         i. Not issued the policy or portion thereof;
         ii. Not issued the policy in as large of an amount; or
         iii. Not provided coverage with respect to the hazard resulting in loss.

**Premiums**

The "first named insured" is legally responsible for the payment of all premiums. You or a billing client making premium payments on your behalf will be the payee for any premium refunds.

**Grace Period**

You are entitled to a minimum grace period of 7 days for the payment of any premium due except the first payment, during which grace period the policy shall continue in full force. For the purposes of this provision, an initial payment on the renewal of a policy is not a first payment of premium.

**Premium Changes**

A. The premium is based on information we received from you or other sources. You agree to cooperate with us in keeping this information current. Your premium may be adjusted accordingly.

B. Premium is fully earned on seasonal vehicles (includes classic II and antique automobiles, motorcycles, ATV's, watercraft, snowmobiles, farm trucks, farm truck tractors, motorhomes and trailers). Exception: A pro rata refund is allowed if:
   1. The seasonal vehicle was sold, destroyed or stolen;
   2. Cancellation is due to the death of the "insured";
   3. Cancellation is at the request of the Company; or
   4. Cancellation applies to all vehicles on the policy.

**Renewal Premium**

A. If not cancelled or nonrenewed by us, this policy may be renewed at the rates then in effect, for

successive periods of 12 months, if the premium is paid within ... days of ... due date.

B. If we accept a later payment of the required premium, the policy is reinstated as of the date and time payment is received. A new policy period is then established. No coverage exists after the former expiration date and before the newly established effective date.

**Your Cancellation**

The "first named insured" may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**Our Cancellation**

A. We may cancel this policy, or any part of it, subject to the following conditions. Our right to cancel applies to each coverage or limit in this policy. We may cancel by mailing or delivering to the "first named insured" written notice of cancellation at least:
   1. 8 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   2. 10 days before the effective date of cancellation if we cancel for any other reason.

B. We may cancel liability, property or umbrella coverages in force for 60 days or more only for the following reasons:
   1. Nonpayment of premium or nonpayment of any installment thereof;
   2. Conviction of the "named insured" of a crime "arising out of" acts increasing the hazard insured against;
   3. Acts or omissions by the "insured" or the "insured's" representative constituting fraud or material misrepresentation in obtaining the policy, continuing the policy, or presenting a claim under the policy;
   4. Discovery of grossly negligent acts or omissions by the "insured" substantially increasing any of the hazards insured against;
   5. The risk originally accepted has substantially increased except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;
   6. Determination by the Director of Insurance that continuation of coverage could place us in violation of the laws of Arizona; or
   7. Failure of the "insured" to take reasonable steps to eliminate or reduce any conditions in or on the insured premises that contributed to a loss in the past or will increase the probability of future losses.

C. We may cancel coverage on vehicles insured for 60 days or more only for the following reasons:
   1. Nonpayment of premium or nonpayment of any installment thereof;
   2. The insurance was obtained through fraudulent misrepresentation;
   3. The "named insured", any operator residing in the household of the "named insured" who customarily operates a motor vehicle insured under the policy, or any other "person" who regularly or frequently operates a motor vehicle insured under the policy:
      a. Has had his or her driver's license suspended or revoked during the policy period;
      b. Becomes permanently disabled, either physically or mentally, and such individual does not produce a certificate from a physician or a registered nurse practitioner testifying to such "person's" ability to operate a motor vehicle;
      c. Is or has been convicted during the 36 months immediately preceding the effective date of the policy or during the policy period of:
         i. Criminal negligence, resulting in death, homicide or assault, "arising out of" the operation of a motor vehicle;
         ii. Operating a motor vehicle while in an intoxicated condition or while under the influence of drugs;
         iii. Leaving the scene of an accident;
         iv. Making false statements in an application for a driver's license; or
         v. Reckless driving;

      Unless you agree in writing to exclude as insured such "person" by name when operating a motor vehicle and further agree to exclude coverage to the "named insured" for any negligence which may be imputed by law to the "named insured" "arising out of" the maintenance, operation or use of a motor vehicle by the excluded "person".
   4. We are placed in rehabilitation or receivership by the insurance supervisory official in our state of domicile or by a court of competent jurisdiction or the Director of Insurance has suspended our certificate of authority based on its financially hazardous condition;
   5. The "named insured", any "person" who resides in the same household as the "named insured" and customarily operates a motor vehicle insured under the policy, or any other "person" who regularly and frequently operates a motor vehicle insured under the policy, uses a motor vehicle regularly and

frequently for commercial purposes when that motor vehicle is rated or insured under the policy as a private passenger motor vehicle;

6. The Director of Insurance determines that the continuation of the policy would place us in violation of the laws of Arizona or would jeopardize our solvency; or
7. The "named insured", any "person" who resides in the same household as the "named insured" and who customarily operates a motor vehicle insured under the policy or any other "person" who regularly and frequently operates a motor vehicle insured under the policy uses a motor vehicle insured under the policy to provide transportation network services unless, while the driver is logged in to the transportation network company's digital network or software application to be a driver or is providing transportation network services, the "named insured" either:
   a. Has procured an endorsement to the policy that expressly provides coverage for transportation network services; or
   b. Is covered by a motor vehicle liability insurance policy issued by another insurer expressly providing coverage for transportation network services.

**Your Cancellation/Our Cancellation**

A. Notice of cancellation is accomplished when we mail our written notice by certified mail or by U.S. Post Office certificate of mailing to the "first named insured's" last mailing address known to us.
B. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
C. If this policy is cancelled, we will return any premium refund due. If we cancel, the refund will be pro rata.
D. If the "first named insured" cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
E. Renewal or continuation of this policy does not act as a waiver or estoppel of any reasons for cancellation which existed before the effective date of renewal or continuation.
F. We will not cancel coverage on vehicles based solely on location of residence, age, race, color, religion, sex, national origin or ancestry of anyone who is an "insured".

**Nonrenewal**

A. If we decide not to renew this policy, we will mail, by first class mail, written notice of nonrenewal to the "first named insured" indicated in the Declarations, at the last mailing address known to us, at least 45 days before the expiration or anniversary date of this policy.
B. In the event of nonrenewal based on condition of the premises, the "insured" shall be given 30 days notice to remedy the identified conditions. In the event that the identified conditions are remedied, coverage shall be renewed. In the event that the identified conditions are not satisfactorily remedied, the "insured" shall be given an additional 30 days, upon payment of premium, to cure the defective condition. In the event the defective conditions are not satisfactorily remedied, the policy will be cancelled.
C. Payment of dues and current membership in the Arizona Farm Bureau Federation is a requirement to obtain and continue this policy. In accordance with Arizona Revised Statute 20-1631(M), we may nonrenew this policy because of nonpayment of Farm Bureau dues. If coverage is declined, cancelled or nonrenewed by you or us, the membership dues are nonrefundable.
D. We will not nonrenew coverage on vehicles based solely on location of residence, age, race, color, religion, sex, national origin or ancestry of anyone who is an "insured"; except we may nonrenew if a "named insured" establishes a primary residence in a state other than Arizona.

**Change / Assignment of Interest**

A. No insured may assign any rights and duties under this policy without our written consent.
B. No change of interest in this policy is effective unless we consent in writing. However, if a "named insured" dies, provided we are informed of the death of the "named insured", we will protect as "named insured":
   1. Any surviving member of the "named insured's" household who is an "insured" under the policy, but only if a resident of the "named insured's" household at the time of death;
   2. Any "person" or organization with proper temporary custody of your insured vehicle or other property, but, only with respect to that property, until a legal representative is qualified; and then
   3. Any legal representative while acting within the scope of his or her duties on behalf of the deceased.

**Insurable Interest**

We will not pay for any loss to property in which you or any "insured" do not have an insurable interest at the time of loss. If more than one "person" or organization has an insurable interest in the covered property, we will pay no more than the amount of your or any "insured's" interest, up to the amount of coverage that applies.

**Severability**
This insurance applies separately to each "insured" against whom a claim or "suit" is brought, but having more than one "insured" does not increase the limits shown in the Declarations.

**Joint Interests**
When there are two or more "named insureds", each acts for all to change the policy.

**Change of Policy Provisions**
The terms of this policy may only be changed or waived by a written endorsement.

**Liberalization Clause**
If any coverage you carry is changed by us to give broader coverage without additional premium, we will give you the broadened coverage without the issuance of a new policy or a change in premium as of the date we make the change effective in your state.

If coverage changes include both broadenings and restrictions of coverage as part of a general policy revision, those coverage changes are not considered a part of this Liberalization Clause.

**Terms of Policy to Conform to Statute**
Terms of this policy which are in conflict with the Arizona statutes are amended to conform to such statutes, but only to the extent of the minimum coverage required by law.

**No Benefit to Bailees**
A bailee is someone who has care, custody, or control of your property with your permission. This insurance is not for the benefit of a bailee of your property, and we may seek reimbursement from the bailee if his or her negligence caused or contributed to the damage we paid under this policy.

**Reservation of Rights**
No act in connection with the investigation of any loss or claim by our employees or representatives shall be considered a waiver of any defense which we might otherwise have with respect to any loss or claim. All such acts of investigation shall be considered to have been made without compromising the coverages as described in the policy. The act of investigation, by itself, is not intended to convey that coverage exists. As the facts become known, the policy language will determine if coverage exists or not for the loss, and all provisions under the policy are specifically reserved during our investigation.

**Inspections and Surveys**
A. We have the right but are not obligated to make inspections and surveys at any time, to give you reports on the conditions we find, and to recommend changes. Any inspections, surveys, reports or recommendations will relate only to insurability and the premiums to be charged. We do not:
   1. Undertake the duty of any "person" or organization to provide for the health or safety of workers or the public; or
   2. Warrant that conditions are safe or healthful or that they comply with laws, regulations, codes or standards.
B. This condition applies not only to us, but also to any advisory, rating service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**Audits/Premium Adjustments**
We have the right to inspect and audit your books and records at any time during the policy period and up to 36 months after the expiration of the policy. This applies only to subject matter as it relates to insurance and the determination of insurance premiums.

**Bankruptcy of Any Insured**
Bankruptcy or insolvency of any "insured", or by an "insured's" estate, shall not relieve us of any of our

obligations under the policy.


**Action Against Us**

A. No one may bring an action against us under the coverage forms unless there has been full compliance with all the terms of the coverage forms.

B. For coverages under the Property Section, any action against us must be started within one year, after the date of loss. This does not include:
   1. A burglary or theft loss;
   2. Loss to glass; or
   3. Loss to Scheduled Personal Property.

C. For coverages under the Auto Uninsured and Underinsured Motor Vehicle Module or the Motorcycle, Recreational Vehicle or Snowmobile Uninsured and Underinsured Motor Vehicle Module, any action against us must be started within three years from the earliest of:
   1. The date the "person" knew or should have known that the tortfeasor was uninsured or has insufficient liability insurance to cover the "person's" injuries;
   2. The date the "person" knows or should have known that the coverage was denied by the tortfeasor's insurer; or
   3. The date the "person" knows or should have known of the insolvency of the tortfeasor's insurer.

D. For coverages under this policy other than the Property Section, except as stated below, Auto Uninsured and Underinsured Motor Vehicle Module or Motorcycle, Recreational Vehicle or Snowmobile Uninsured and Underinsured Motor Vehicle Module any action against us must be started within two years after the date of loss. Any action against us must be started within two years after the date of loss for coverages under the Property Section if the loss is:
   1. A burglary or theft loss;
   2. Loss to glass; or
   3. Loss to Scheduled Personal Property.

E. For coverages under the Vehicle Liability Module, Liability Section and Umbrella Section, no one shall have any right to join us as a party to any action against any "insured". Further, no action based upon any obligation of any "insured" shall be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

F. When two or more different periods of limitations would apply to a particular claim, the longer period of limitation is to be applied.

# Vehicle Section

## Introduction

A. For each "owned" "personal vehicle" you need specific vehicle insurance coverage.

B. "Personal vehicles" include:
   1. "Autos" such as private passenger cars, pickups, vans, antiques, classics, "motorhomes," farm trucks and farm truck tractors;
   2. "Motorcycles";
   3. Certain "recreational motor vehicles";
   4. "Snowmobiles"; and
   5. "Watercraft" such as inboard motor boats, outboard motor boats, inboard/outboard motor boats, houseboats and sailboats.

C. Your coverages are determined by combining the terms and provisions of the General Section and Vehicle Section with one or more of the following vehicle modules for your "personal vehicle" indicated in the Declarations:
   1. Vehicle Liability Module provides Bodily Injury Liability and Property Damage Liability Coverages plus other extra coverages for "personal vehicles."
   2. Auto Medical Payments Module provides Auto Medical Payments Coverage for "autos" for "auto" related accidents.
   3. Damage to Your Vehicle Module provides Comprehensive, Collision or Physical Damage Coverages, plus other extra and optional coverages.
   4. Auto Uninsured and Underinsured Motor Vehicle Module provides Uninsured Motor Vehicle and Underinsured Motor Vehicle Coverages.
   5. Auto Death Indemnity and Disability Income Module provides Death Indemnity and Disability Income Coverage only for land motor vehicle related accidents.
   6. Motorcycle, Recreational Motor Vehicle and Snowmobile Medical Payments Module provides Medical Payments Coverage for "motorcycles," "recreational motor vehicles" and "snowmobiles."
   7. Watercraft Medical Payments Module provides Medical Payments Coverage for "watercraft."
   8. Motorcycle, Recreational Motor Vehicle and Snowmobile Uninsured and Underinsured Motor Vehicle Module provides Uninsured Motor Vehicle and Underinsured Motor Vehicle Coverages.

## Notification of Loss

In case of an accident, "occurrence" or "loss" to which this insurance may apply, refer to the General Section for specific notification of loss instructions.

## Glossary

The language in this section includes certain words or phrases that are given exact meanings to make clear what we mean when we use them. Each word or phrase surrounded by quotation marks is defined in this glossary, in the General Section or in a module under the heading Additional Definitions. If a word is defined in more than one location, the definition in this section takes precedence for the coverages described in this section or the modules under this section. If the same word is defined in a module under this section that definition takes precedence for that module.

**"Actual Cash Value"**
The amount which it would cost to repair or replace damaged property with like kind and quality, less allowance for depreciation and physical deterioration including obsolescence.

**"Arising Out Of"**
See General Section Definitions.

**"Auto"**
A land motor vehicle with at least four wheels designed for use mainly on public roads. It does not include any vehicle while located for use as a dwelling or other premises.

**"Bodily Injury"**
Bodily harm, sickness or disease sustained by a "person" including death that results from the injury.

**"Caused By"**
See General Section Definitions.

**"Damages"**
See General Section Definitions.

**"Household Member"**
A. A resident of your household who:
   1. Is related to you by blood, marriage, guardianship, adoption; or
   2. Is a minor in your custody or in the custody of any "person" related to you by blood, marriage, guardianship or adoption.
B. A "household member" includes such "persons" temporarily living elsewhere if they:
   1. Are unmarried; and
   2. Usually make their home in your family unit.

**"Medical Expenses"**
See General Section Definitions.

**"Motorcycle"**
A motorcycle, moped, motorscooter, or two or three wheel motorized vehicle of the motorcycle type.

**"Motorhome"**
Any of the following:
A. An "auto" of the van, bus or station wagon type, self-propelled and equipped with permanent type mobile living quarters (including cooking, dining, plumbing or refrigeration facilities); or
B. A camper coach of the truck type upon which is permanently mounted a camper body providing mobile living quarters.

**"Newly Owned Vehicle"**
A vehicle newly "owned" by you, which you tell us about within 30 days of its purchase date and:
A. It is a "personal vehicle" which replaces "your personal vehicle";
B. It is an added "personal vehicle" and all other insured "personal vehicles" of the same vehicle type "owned" by you are insured by us or one of our affiliates or subsidiaries;
C. It is an added "personal vehicle" newly acquired by an unmarried resident of your household who does not own a vehicle, is under 21 and is related to you by blood, marriage, guardianship or adoption, and all other insured "personal vehicles" "owned" by you are insured by us or one of our affiliates or subsidiaries;
D. It is a pickup, panel truck or van that replaces "your personal vehicle" and is used in a business or occupation, other than farming or ranching, for carrying tools or related items to, from, or between job sites; or
E. It is a "trailer" that:
   1. Replaces a "trailer" indicated in the Declarations; or
   2. Is newly added, and at least one "trailer" "owned" by you is insured by us or one of our affiliates or subsidiaries.

We have the right to charge premium effective from the date the vehicle is acquired.

**"Occurrence"**
See General Section Definitions.

**"Occupy" or "Occupying"**
In, on, getting into or out of and in physical contact with.

**"Owned"**
A vehicle owned by you or leased by you under a written agreement for a continuous period of at least six months.

"Person"
See General Section Definitions.

"Personal Vehicle"
Any of the following:
A. An "auto" of the private passenger type designed solely to carry "persons" and their luggage;
B. An "auto" of the pickup, panel truck, van or "motor home" type not customarily used in any business or occupation for:
   1. Delivery of products or supplies unless for farming or ranching;
   2. Carrying of tools or equipment unless for farming or ranching;
   3. Hauling for hire; or
   4. Office, store or display purposes;
C. An "auto" of the truck type, including a truck tractor type, "owned" by a farmer or rancher and used exclusively in connection with their farming or ranching operation, for exchange purposes with neighbors or for personal pleasure;
D. A "motorcycle" or "recreational motor vehicle";
E. A "snowmobile"; or
F. A "watercraft."

"Property Damage"
See General Section Definitions.

"Recreational Motor Vehicle"
A land motor vehicle designed for use principally off public roads. This may include an off road motorcycle, motorscooter, moped, dirt bike, golfcart, or all terrain vehicle of a utility or recreational type.

"Ride Sharing"
An arrangement or activity through which persons, goods or property are transported for compensation, regardless of the amount or form of compensation charged or paid and includes the time:
A. Between the driver accepting a transportation request and the passengers or property entering into or being loaded upon the car used for this request;
B. Passengers or property are in or upon the vehicle used for this request; and
C. Until the passengers have exited or property has been unloaded from the vehicle.

"Snowmobile"
A land motor vehicle designed for use principally off public roads for travel over ice and snow, propelled by means of crawler-type treads, belts or similar mechanical devices.

A "Snowmobile" does not include any vehicle which is propelled by airplane type propellers or fans.

"Snowmobile Sled"
A sled, including a camper sled, if designed for use with and to be pulled by a "snowmobile."

This does not include a sled being used for business or commercial purposes or a farm sled or farm implement while being pulled by "your snowmobile."

"Temporary Substitute Vehicle"
A vehicle not "owned" by you if it replaces "your personal vehicle" for a short time. Its use has to be with the consent of the owner. "Your personal vehicle" has to be out of use due to its breakdown, repair, servicing, damage, or "loss." A "temporary substitute vehicle" is not considered a "non-owned vehicle."

"Trailer"
A. A non-motorized vehicle designed to be towed by a "personal vehicle" but not including one:
   1. Designed to carry persons;
   2. Used for business purposes with other than a "personal vehicle"; or

3. Used as premises for office, store or display purposes.

B. It includes:
1. A semi-trailer designed for use with a truck type tractor when connected to or being towed by a "personal vehicle" of the truck tractor type; or
2. A detached semi-trailer owned by the insured and principally used with a truck type tractor insured on this policy.

C. A farm wagon or farm implement is a "trailer" only while attached to a "personal vehicle" for towing.

**"Transportation Network Company"**
A corporation, partnership, sole proprietorship, or other entity that connects or matches driver(s) with passenger(s), goods or property through the use of any computer or digital network, including an online-enabled application or platform.

**"Vehicle Business"**
A business or job where the purpose is to sell, lease, repair, service, transport, store or park vehicles or "trailers."

**"Vehicle Sharing"**
The use of any vehicle by an individual, company, organization, network or group facilitating the matching or sharing of motor vehicles for use by individuals or businesses through a smartphone application, internet, or call center developed and administered by an individual or company for compensation.

**"Watercraft"**
Any of the following:
A. An outboard motor boat including its remote controls and its other attached equipment;
B. A sailboat including its sails, spars, rigging and its other attached equipment; or
C. An inboard or inboard/outboard powered boat, including its attached equipment.

**"Your Auto"**
The "auto" indicated in the Declarations.

**"Your Farm Truck"**
The farm truck indicated in the Declarations.

**"Your Farm Truck Tractor"**
The farm truck tractor indicated in the Declarations.

**"Your Motorcycle"**
The "motorcycle" indicated in the Declarations.

**"Your Motorhome"**
The "motorhome" indicated in the Declarations.

**"Your Personal Vehicle"**
Any of the following:
A. "Your Auto";
B. "Your Farm Truck";
C. "Your Farm Truck Tractor";
D. "Your Motorcycle";
E. "Your Motorhome";
F. "Your Recreational Motor Vehicle";
G. "Your Snowmobile";
H. "Your Watercraft"; or
I. The vehicle indicated in the Declarations.

"Your personal vehicle" does not include a "trailer".

"Your Recreational Motor Vehicle"
The "recreational motor vehicle" indicated in the Declarations.

"Your Snowmobile"
The "snowmobile" indicated in the Declarations.

"Your Watercraft"
The "watercraft" indicated in the Declarations.

# Vehicle Liability Module

This module is part of the Vehicle Section. The provisions in this module, combined with the provisions in the General Section and the Vehicle Section provide the vehicle liability coverages you selected.

Coverage under this module applies to an "occurrence" happening in the United States of America, its territories and possessions or Canada, including their coastal waters, or while the insured vehicle is being shipped between ports. There is no coverage outside these geographical areas.

## Liability Coverages

You have the following coverages for a particular vehicle only to the extent they are indicated in the Declarations for that vehicle.

### Bodily Injury Liability Coverage and Property Damage Liability Coverage

We cover "damages" that result from "bodily injury" or "property damage" "caused by" an "occurrence" to which these coverages apply involving the ownership, operation, maintenance, use, loading, unloading or negligent entrustment of "your personal vehicle."

### Defense Obligations

If a "suit" for covered "damages" is brought against an "insured," we will provide a defense at our expense. We have the right to investigate, decide if and how to settle and choose the attorney(s). When we have paid "damages" equal to the limit of liability coverage for an "occurrence," we have no further duty to defend any "insured" for that "occurrence."

We have no duty to defend any "suit" to which this insurance does not apply.

### Use of Other Vehicles Liability

Coverage under this module is extended to the ownership, operation, maintenance, use, loading, unloading or negligent entrustment, by an "insured," of a "newly owned vehicle," a "temporary substitute vehicle" or a "non-owned vehicle."

### Vehicle Trailer Liability

Coverage under this module is extended to cover:

A. Any "trailer" you own, and
B. Any non-owned "trailer" while used by an "insured" with a "personal vehicle" we insure for liability.

## Who Is An Insured

A. Within this module when we refer to "your personal vehicle," a "newly owned vehicle" or a "temporary substitute vehicle," "insured" is defined as:
   1. You;
   2. Any "household member";
   3. Any other "person" while using "your personal vehicle," a "newly owned vehicle" or a "temporary substitute vehicle" if its use is within the scope of your consent; or
   4. Any other "person" or organization liable for the use of such a vehicle by one of the above "insureds."
B. Within this module, when we refer to a "non-owned vehicle," "insured" is defined as:
   1. You;
   2. Any "person" who does not own a "personal vehicle" and is a partner or officer of an organization indicated as a "named insured";
   3. Any "household member" of a "person" in 1 or 2 above; or
   4. Any "person" or organization which does not own or hire the vehicle but is liable for its use by one of the "persons" in 1, 2 or 3.
C. "Insured" does not include:
   1. The United States of America or any of its agencies.
   2. Any "person" for "damages" for "bodily injury" or "property damage" "arising out of" the

ownership, operation, maintenance, use, loading, unloading or negligent entrustment of a vehicle by that "person" as an employee of the United States Government when the provisions of the Federal Tort Claim Act apply.

## Extra Coverages

Subject to the terms and conditions of the General Section, the Vehicle Section and this module, amounts paid under Extra Coverages are in addition to the amounts paid as "damages," unless otherwise stated.

### Claim Expenses Coverage

We will pay the following extra expenses related to the settlement of a claim:

### Court Costs and Your Expenses

We will pay expenses incurred by us and court costs charged to any "insured" in any "suit" we defend.

We will also pay reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day for helping us in the investigation or defense of any claim or "suit."

### Bonds

We will pay premiums on bonds required in any "suit" we defend, but not for bond amounts greater than the limit of liability for this coverage.

We will also pay up to $250 for each bail bond needed because of an accident or related traffic or boating violation.

We have no duty to furnish or apply for any bonds.

### Watercraft Additional Expenses

We will pay expenses incurred by an "insured" after an "occurrence" covered under this module due to the "insured's" legal liability:

A. For the actual or attempted raising, removal or destruction of the "watercraft" insured by this module, if made necessary because of its stranding, burning or sinking; or
B. For necessary life saving or life salvage costs.

### Post Judgment Interest

We will pay interest on the entire judgment which accrues after entry of the judgment and before we pay, tender, or deposit in court that part of the judgment which does not exceed the limit of liability coverage that applies.

### First Aid Coverage

We will pay expenses incurred by any "insured" for immediate first aid medical treatment of others, conducted at the scene of an accident, required because a "person" involved in the accident suffers "bodily injury" covered by this module. We will not pay for first aid to you or any other "insured."

### Out of State Coverage

If an "insured" under this liability coverage is in another state or province and becomes subject to their motor vehicle compulsory insurance, financial responsibility or similar law, requiring limits of liability for "bodily injury" or "property damage" greater than the amount of coverage indicated in the Declarations for the applicable vehicle, we will provide the required higher limit.

If the state or province has a compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, we will provide the required minimum amounts and types of coverage.

### Financial Responsibility

If we certify this policy as proof of financial responsibility under any financial responsibility law, this policy
will comply with the provisions of the law to the extent coverage is required.

You agree to reimburse us for any payment made by us which we would not have been obligated to make under the terms of this policy except for this agreement contained in this provision.

## Notification Of Loss

In case of an accident, "occurrence" or loss to which this insurance may apply, refer to the General Section for specific notification of loss instructions.

## Payment For Loss

The Payment For Loss provisions in the General Section apply and are expanded as follows with respect to coverage provided by this module.

## Limits Of Insurance

**Split Limits**

When you have purchased split limits of liability as indicated in the Declarations for the applicable vehicle, our limit of liability is as follows:

A. The "bodily injury" liability limit for each "person" includes "damages" sustained by others "arising out of" the "bodily injury" and is the maximum we will pay as "damages" for "bodily injury" to one "person" in one "occurrence."

B. Subject to the "bodily injury" limit for each "person," the "bodily injury" limit for each "occurrence," is the maximum we will pay as "damages" for "bodily injury" to two or more "persons" in one "occurrence."

C. The "property damage" liability limit for each "occurrence," is the maximum we will pay for "property damage" in one "occurrence."

**Combined Single Limit**

When you have purchased a combined single limit of liability as indicated in the Declarations for the applicable vehicle, our limit of liability for all "damages" resulting from any one "occurrence" is the limit indicated for liability insurance.

**Split Limits and Combined Single Limit**

A. We will pay no more than the indicated amount for split limits or a combined single limit regardless of the number of:
   1. Vehicles or "persons" insured under this policy; or
   2. Claims, claimants, "persons," policies or vehicles involved in the "occurrence."

B. A motor vehicle and "trailer" used with that vehicle are one vehicle. A "watercraft" and "trailer" used with a "watercraft" are one vehicle. Therefore, the liability limits are not increased.

C. When two or more motor vehicles or "watercraft" are insured under this policy the liability limits apply separately to each.

## Other Liability Insurance Coverage

A. If there is other applicable liability coverage we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

B. Any insurance we provide on a vehicle you do not own will only be primary if the vehicle is insured under a policy affording coverage to a named insured engaged in a "vehicle business". This only applies if an "insured":
   1. Is operating the vehicle; and
   2. Is neither the "person" engaged in such "vehicle business" not that "person's" employee or agent.

C. Except as provided above, any insurance we provide for a vehicle you do not own shall be excess over any other liability insurance. If the liability limits on the vehicle you do not own are less than your limit of liability, the excess coverage shall be limited to the difference between the liability limits on the "non-owned vehicle" and the liability limits on the vehicle listed in the declarations. However, if the limits of liability on the vehicle you do not own are equal to or greater than your

limits of liability, then there is no excess liability coverage available.

## Additional Definitions

Under the Vehicle Liability Module, the Definitions in the General Section and the Glossary in the Vehicle Section apply. If a word is defined in more than one location, the definition in this module takes precedence for the coverages described in this module. The definitions are expanded as follows:

"Non-Owned Vehicle"
A "personal vehicle," not "owned" by you or registered in your name. The use has to be within the scope of consent of the owner or "person" in lawful possession of it.

"Pollutant"
Any solid, liquid, gaseous, radioactive or thermal contaminant or irritant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be disposed of, reconditioned, recycled or reclaimed.

## Additional Exclusions

Under the Vehicle Liability Module, the Exclusions in the General Section apply and are expanded as follows:

Handling of Property
There is no coverage for any "damages" "arising out of" the handling of property:
A. Before it is moved from the place where it is accepted by an "insured" for movement into or onto a vehicle; or
B. After it is moved from a vehicle to the place where it is finally delivered by an "insured."

Intrafamily Immunity
There is no coverage exceeding the limits mandated by the financial responsibility law of the state of Arizona for any "bodily injury" to any "insured" or any member of an "insured's" family residing in the "insured's" household.

Mechanical Devices
There is no coverage for "damages" "arising out of" the movement of property by a mechanical device, other than a hand truck, not attached to "your personal vehicle."

"Non-Owned Vehicles"
A. There is no coverage for vehicles which are not "your personal vehicles" that are owned by you or furnished or available for your regular or frequent use.
B. There is no coverage for vehicles which are not "your personal vehicles" that are owned by, registered in the name of, or furnished or available for the regular of frequent use of any "household member."

   This exclusion B. does not apply to you while you are maintaining or "occupying" any vehicle which is owned by, registered in the name of, or furnished or available for the regular or frequent use of any "household member."
C. There is no coverage for vehicles which are not "your personal vehicle" while:
   1. Being repaired, serviced or used by any "person" while that "person" is working in any "vehicle business"; or
   2. Used in any other business or occupation.

   These two exclusions, C.1. and C.2., do not apply to a "personal vehicle" driven or "occupied" by an "insured" or a farm/ranch or household employee of an "insured."

Non-Permissive Use
There is no coverage for any "person" using an insured vehicle without your or a "household member's" permission.

Other Damages
There is no coverage for any "damages":
A. For loss to property owned by, rented to, in the care of or transported by an "insured." We do cover damage to a residence or private garage rented to you "caused by" a "personal vehicle" we insure;
B. "Arising out of" the ownership, maintenance, use or operation of farm machinery;
C. For liability assumed by the "insured" under any contract or agreement; or
D. "Arising out of" the ownership, maintenance or use of any vehicle "owned" by you which is not "your personal vehicle" or a "newly owned vehicle."

Pollution
There is no coverage for "damages" or "medical expenses" "arising out of" the actual or threatened discharge, dispersal, release or escape of "pollutants" unless such discharge, dispersal, release or escape is both sudden and accidental.

Transportation Network Company Service
There is no coverage for any "damages" "arising out of" the use of any vehicle while being used or available to carry "persons" or property for a charge, fee, or donation, or in cooperation with a "Transportation Network Company" in a "ride sharing" program under the terms of an oral, written, or electronic agreement. This includes but is not limited to the period of time:

Period 1 - When a driver is logged onto an internet-enabled application or platform used by a "Transportation Network Company" to arrange "ride sharing" services.
Period 2 - When a driver has accepted a "ride sharing" request or is en route to provide "ride sharing" services.
Period 3 - When a passenger or property is "occupying" the vehicle as part of a "ride sharing" service.

United States Government
There is no coverage for any "damages" for which the United States Government might be liable for an "insured's" use of a vehicle.

Unlawful Acts
There is no coverage exceeding the limits mandated by the financial responsibility law of the state of Arizona while any vehicle is being used in any unlawful trade or transportation.

Vehicle Business
There is no coverage for any "damages" "arising out of" any vehicle being repaired, serviced or used by any "person" employed or engaged in any way in a "vehicle business." This exclusion does not apply to you, your agent, employee or partner or any "household member."

Vehicle Rented to Others
There is no coverage for any "damages" "arising out of" any of your vehicles being rented to others.

Vehicle Sale
There is no coverage for any "damages" "arising out of" any vehicle being consigned to, or held for sale by any "vehicle business."

Vehicle Sharing
There is no coverage for any "damages" "arising out of" the use of any vehicle while being used in a "vehicle sharing" program. This exclusion does not apply while the vehicle is being operated by you or any "household member".

Vehicle Used for a Fee
There is no coverage for any "damages" "arising out of" any vehicle while being used to carry people or property for a fee. This exclusion does not apply to a shared-expenses car pool or a motor vehicle used in the course of volunteer work for a tax-exempt organization as described in A.R.S. 43-1201,

paragraph 4.

Workers Compensation or Disability
There is no coverage for any amounts an "insured" is legally obligated to pay under any workers compensation, disability benefits, unemployment compensation or similar laws.

# Auto Medical Payments Module

This module is part of the Vehicle Section. The provisions in this module, combined with the provisions in the General Section and the Vehicle Section provide the private passenger auto medical payments coverages you selected.

Coverage under this module applies anywhere in the world.

## Medical Payments Coverage

You have the following coverage for a particular vehicle only to the extent that it is indicated in the Declarations for that vehicle.

We will pay "medical expenses" "caused by" an accident causing "bodily injury" which occurs during the policy period to:

A. Any "insured":
   1. "Occupying," operating, loading or unloading any "auto" or "trailer"; or
   2. As a pedestrian when colliding with or when struck by a motor vehicle designed for use mainly on public roads or a "trailer".

B. Any other "person" "occupying," operating, loading or unloading:
   1. "Your auto;"
   2. "A newly owned vehicle," that is not a "motorcycle," "recreational motor vehicle," "snowmobile" or "watercraft";
   3. A "temporary substitute vehicle" that is not a "motorcycle," "recreational motor vehicle"; "snowmobile" or "watercraft"; or
   4. A "non-owned vehicle" if the "bodily injury" results from its "occupancy" or operation by:
      a. Any "insured";
      b. Any "person" who does not own an "auto" and is a partner or officer of an organization indicated as a named insured;
      c. Any "household member" of a "person" in a. or b. above; or
      d. Any farm or household employee in the scope of employment of a "person" in a., b. or c. above.

We will pay only expenses determined to be medically necessary and incurred within three years from the date of the accident.

## Who Is An Insured

"Insured" means you and any "household member."

## Notification Of Loss

In case of an accident, "occurrence" or loss to which this insurance may apply, refer to the General Section for specific notification of loss instructions.

### Auto Medical Payments

The "person" making claim shall also be examined by physicians chosen and paid by us as often as we may reasonably request. If the "person" making claim is deceased or otherwise unable to act, his or her legal representative shall authorize us to obtain all medical reports and records.

## Payment For Loss

The Payment For Loss provisions in the General Section apply and are expanded as follows with respect to coverage provided by this module.

## Limit Of Insurance

The limit of insurance as indicated in the Declarations is the most we will pay for any one "person" as the result of any one accident.

We will pay no more than this limit regardless of the number of:
A. Vehicles or "persons" insured under this policy; or
B. Claims, claimants, "persons," policies or vehicles involved in the accident.

The limit of liability for funeral expenses shall not exceed $5,000 each "person."

#### Medical Expense Payment
A. We may pay "medical expenses" to:
   1. The injured "person";
   2. Any "person" or organization providing the medical services;
   3. The parent or guardian if the injured "person" is a minor or legally incompetent;
   4. The surviving spouse; or
   5. Any "person" or organization authorized by law to receive such payment.
B. We are not responsible for the way the money is used.
C. Any payment under this coverage shall be applied toward the settlement of a claim or payment of a money judgement for "bodily injury" to any "person" that receives payment under the Vehicle Liability Module or Auto Uninsured and Underinsured Motor Vehicle Module provided that such application does not prevent the "person" from receiving full compensation for their "bodily injury."

### Other Medical Payments Coverage
A. If any "insured" is injured:
   1. While "occupying" "your auto" this policy will provide the primary medical payments coverage,
   2. While "occupying" a "newly owned vehicle" this policy does not apply if there is other valid and collectible vehicle medical payments coverage,
   3. While "occupying" or operating a "non-owned vehicle" this policy is excess over any other vehicle medical payments coverage, or
   4. While a pedestrian this policy is excess over any other vehicle medical payments coverage.
B. If there is other applicable auto medical payments coverage we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

### Additional Definitions
Under the Auto Medical Payments Module, the Definitions in the General Section and the Glossary in the Vehicle Section apply. If a definition is located in more than one location, the definition in this module takes precedence for the coverages described in this module. The definitions are expanded to include the following:

#### "Non-Owned Vehicle"
An "auto" not "owned" by you or registered in your name.

### Additional Exclusions
Under the Auto Medical Payments Module, the Exclusions in the General Section are expanded as follows:

#### If Not Your Auto
There is no coverage for "medical expenses" due to "bodily injury" to a "person" "occupying," operating, loading or unloading or being struck while a pedestrian by any vehicle owned by or furnished or available for regular use by you or any "person" living in your household if it is not:
A. "Your auto";
B. A "newly owned vehicle";
C. A "temporary substitute vehicle"; or
D. "Your motorhome."

#### Motorized Vehicles with Less Than Four Wheels
There is no coverage for "medical expenses" due to "bodily injury" to a "person" "occupying," operating, loading or unloading any motorized vehicle with less than four wheels.

Other Payments
There is no coverage for "medical expenses" due to "bodily injury" to any "person" to the extent benefits for "medical expenses" are available under any automobile or premises insurance.

Scope of Consent
There is no coverage while "your auto," "your motorhome," a "newly owned vehicle," a "temporary substitute vehicle" or a "non-owned vehicle" you or a "household member" are using, is not being used within the scope of consent of the owner or "person" in lawful possession of it.

Transportation Network Company Service
There is no coverage for "medical expenses" "arising out of" the use of any vehicle while being used or available to carry "persons" or property for a charge, fee, or donation, or in cooperation with a "Transportation Network Company" in a "ride sharing" program under the terms of an oral, written, or electronic agreement. This includes but is not limited to the period of time:

Period 1 - When a driver is logged onto an internet-enabled application or platform used by a "Transportation Network Company" to arrange "ride sharing" services.

Period 2 - When a driver has accepted a "ride sharing" request or is en route to provide "ride sharing" services.

Period 3 - When a passenger or property is "occupying" the vehicle as part of a "ride sharing" service.

Unlawful Acts
There is no coverage while any vehicle is being used in any unlawful trade or transportation.

Vehicle Business
There is no coverage while any vehicle is being repaired, serviced or used by any "person" employed or engaged in any "vehicle business". This exclusion does not apply to any "insured," their agent, employee or partner.

Vehicle Sharing
There is no coverage for "medical expenses" "arising out of" the use of any vehicle while being used in a "vehicle sharing" program. This exclusion does not apply while the vehicle is being operated by you or any "household member".

Vehicles Used For a Fee or Rented to Others
A. There is no coverage for the following vehicles while being used to carry people or property for a fee or while being rented to others:
   1. "Your auto," a "newly owned vehicle" or a "temporary substitute vehicle";
   2. A "non-owned vehicle" while being operated by:
      a. Any "insured";
      b. Any "person" who does not own an "auto" and is a partner or officer of an organization indicated as a "named insured";
      c. Any "household member" of a "person" in a. or b. above; or
      d. Any farm or household employee in the scope of employment of a "person" in a., b. or c. above.
B. This exclusion does not apply to a shared-expenses car pool or a motor vehicle used in the course of volunteer work for a tax-exempt organization as described in A.R.S. 43-1201, paragraph 4.

Workers Compensation Benefits
There is no coverage for "medical expenses" due to "bodily injury" to any "person" to the extent workers compensation benefits are required or available.

# Damage To Your Vehicle Module

This module is part of the Vehicle Section. The provisions in this module, combined with the provisions in the General Section and the Vehicle Section provide the vehicle physical damage coverages you selected.

Coverage under this module applies to an "occurrence" or "loss" happening in the United States of America, its territories and possessions or Canada, including their coastal waters, or while the insured vehicle is being shipped between their ports. There is no coverage outside these geographical areas.

## Damage To Your Vehicle Coverages

You have the following coverages for a particular vehicle only to the extent that they are indicated in the Declarations for that vehicle.

### Collision Coverage

We will pay for "loss" to "your personal vehicle" including its "common equipment" "caused by" "collision".

### Comprehensive Coverage

We will pay for "loss" to "your personal vehicle" and its "common equipment", except "loss" by "collision".

If indicated in the Declarations, first dollar comprehensive coverage applies for repair or replacement of auto glass or glass or plastic used in lights with no deductible or minimum amount.

Breakage of glass, or "loss" caused by missiles, falling objects, fire, theft, larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, riot or civil commotion is payable under this coverage. "Loss" due to hitting or being hit by a bird or animal is payable under this coverage.

### Comprehensive Without Glass Coverage

A. We will pay for "loss" to "your personal vehicle" and its "common equipment" except:
   1. "Loss" by "collision"; or
   2. "Loss" to glass or breakage of glass.

B. "Loss" caused by missiles, falling objects, fire, theft, larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, riot or civil commotion is payable under this coverage. "Loss" due to hitting or being hit by a bird or animal is payable under this coverage.

### Physical Damage Coverage

This coverage is provided only for "watercraft". We will pay for all direct physical "loss" to covered "watercraft" and their "common equipment" except as excluded.

## What Additional Vehicles Are Insured

A. Within this module:
   1. The coverages on "your personal vehicle" extend to a "loss" to a "newly owned vehicle", a "temporary substitute vehicle" or a "non-owned vehicle"; and
   2. The Comprehensive and Collision coverages extend to a "trailer" that qualifies as a "newly owned vehicle".

B. Coverages extend to a "non-owned vehicle" only while it is driven by or is in the custody of:
   1. You;
   2. Any "person" who does not own a "personal vehicle" and is a partner or officer of an organization indicated as a "named insured";
   3. Any "household member" of a "person" in 1 or 2 above; or
   4. Any "person" or organization which does not own or hire the vehicle but is liable for its use by

one of the "persons" in 1, 2 or 3.

Its use has to be within the scope of the consent of the owner or "person" in lawful possession of the "non-owned vehicle".

## Extra Coverages

Subject to the terms of the General Section, the Vehicle Section and this module, amounts paid under Extra Coverages are in addition to the amounts paid for "your personal vehicle" unless otherwise stated.

### Auto Transportation Costs Coverage

Under Comprehensive Coverage, we will pay transportation costs incurred by you if "your auto" is stolen. Such transportation costs shall not exceed $40 per day. The payment period begins 48 hours after you report the theft and notify the police. The period ends when:

A. We offer to pay for the "loss";
B. "Your auto" is returned to use; or
C. The total payments equal $1,200,

whichever occurs first.

### Child Passenger Restraint System Coverage

We will pay the reasonable cost to replace any child passenger restraint system, owned by you or any "household member", damaged in a covered Comprehensive or Collision "loss". This coverage does not apply to "loss" resulting from theft, except when the entire "auto" is stolen.

No deductible applies to this coverage.

### Clothes and Luggage Physical Damage Coverage

A. We will pay for "loss" to clothes and luggage owned by you or any "household member". These items have to be in or on a "personal vehicle" covered by this module. "Your personal vehicle" has to be covered under this module for:
   1. Comprehensive or Physical Damage Coverage and the "loss" "caused by" fire, lightning, flood, falling objects, explosion, earthquake or theft. If the "loss" is due to theft, the entire vehicle must have been stolen; or
   2. Collision or Physical Damage Coverages, and the "loss" caused by "collision".
B. $200 is the most we will pay in any one "occurrence" even though more than one "person" has a "loss".
C. This coverage is excess over any other coverage.

### Owned Topper, Slide-In Camper or Trailer Coverage

A. Each "topper", "slide-in camper" or "trailer" indicated in the Declarations is insured for the coverages and limits indicated as applying to it.
B. An owned "topper", "slide-in camper" or "trailer" not described in the Declarations is insured for "loss" not to exceed $1,000, for the Comprehensive and Collision Coverages that apply to "your personal vehicle". No extra premium is charged.
C. There is no coverage for a "trailer" that:
   1. Is a farm wagon or farm implement; or
   2. Is not licensed for use on public roads, except a "snowmobile sled".

### Non-Owned Topper, Slide-In Camper or Trailer Coverage

Coverage provided for an owned "topper", "slide-in camper" or "trailer" is extended to the same type non-owned "topper", "slide-in camper" or "trailer".

This extension of coverage does not apply unless the non-owned "topper", "slide-in camper" or "trailer" is being used by or is in the custody of you or a "household member".

A non-owned "topper", "slide-in camper" or "trailer" is one that is not "owned" by, registered in the name of, or furnished or available for the regular or frequent use of you or any "person" living in your

household.

**Pet Injury Coverage**

We will pay reasonable, necessary, and customary amounts up to a total of $1,000 for the veterinary care, burial, and/or disposal of household pets, owned by you or a "household member", "arising out of" their injury or death resulting from a covered Comprehensive or Collision "loss" while riding in an "auto" indicated in the Declarations. Pet Injury Coverage provided by this module is limited to cats and dogs used for personal companionship.

We do not cover injury or death to owned household pets "caused by" heat, dehydration, or exposure to weather.

No deductible applies to this coverage.

**Vehicle Key and Lock Coverage**

If the keys or electronic remote control fobs to "your auto" are damaged, lost or stolen, we will pay reasonable, necessary, and customary amounts for replacement of keys, electronic keys, electronic remote control fobs and to have any reprogramming associated with the new keys performed.

The most we will pay for this coverage in any one policy period is $500, regardless of the number of claims made under this coverage. With respect to this coverage, we will pay no more than one covered claim per policy period for each of "your autos".

Original copies of receipts for services must be submitted before reimbursement is payable.

Each "loss" is subject to a $100 deductible.

This coverage is excess over any other coverage.

## Notification Of Loss

In case of an accident, "occurrence" or "loss" to which this insurance may apply, refer to the General Section for specific notification of loss instructions.

## Payment For Loss

The Payment For Loss provisions in the General Section apply and are expanded as follows with respect to coverage provided by this module.

## Payment Basis

Vehicles and other property insured under this module are insured on the basis of Actual Cash Value, Stated Amount Limit or Repair or Replacement Cost as indicated in the Declarations.

**Actual Cash Value/Stated Amount Limit**

If Actual Cash Value or Stated Amount Limit is indicated in the Declarations, the most we will pay is the lesser of:

A. "Actual cash value" as determined by the market value, age, and condition of the damaged property at the time the "loss" occurred;
B. The amount required to restore the vehicle to its pre-loss condition by repairing or replacing the damaged property or part with like kind and quality; or
C. The Stated Amount Limit, if any, indicated in the Declarations. The Stated Amount Limit is the limit you and we agreed to at policy inception or subsequent date.

**Repair or Replacement Cost**

If Repair or Replacement Cost is indicated in the Declarations for an "auto," we will pay:

A. The reasonable cost to restore the "auto" to its pre-loss condition by repairing or replacing the damaged property or parts, if the "auto" is determined by us not to be a total "loss"; or
B. The cost to replace the "auto" with a similar new "auto" if the damaged "auto" is determined by us

to be a total "loss". A similar new "auto" means a previously untitled "auto" of the model year in which the accident occurred or the model year of the damaged "auto", whichever is newer and to the extent possible, and that matches as closely as possible the damaged "auto's" make, model, size, body type and equipment.

We will determine the "auto" to be a total "loss" when the cost to repair or replace that "auto" or its parts with like kind and quality plus the salvage value exceeds that "auto's" "actual cash value" at the time of the "loss".

We will deduct any unrepaired prior damage from the amount payable for the covered "loss".

The following will be settled at "actual cash value":
A. Losses from theft, larceny or fire; and
B. Vehicles with salvage or flood branded titles.

Payment basis will be changed to Actual Cash Value when the policy renews during the year "your auto" becomes 4 model years old.

**Loss Adjustment**
A. We have the right to settle a "loss" with you or the owner of the property in one of the following ways:
   1. Repair or replace the property or part as indicated;
   2. Return the stolen property and pay for damage resulting from the theft;
   3. Pay you the value of the property, according to the Payment Basis provisions, less its salvage value; or
   4. Pay you the value of the property, according to the Payment Basis provisions, and take ownership of the property.
B. The property cannot be abandoned to us.

**Our Options**
When we pay for a total "loss" or a theft, we may keep all or part of the damaged or recovered vehicle.

If a stolen vehicle is recovered before we make payment, we may return it to you at the address indicated in the Declarations. If we return a stolen vehicle, we will pay for damage resulting from the theft.

If more than one coverage applies, we will pay only under the coverage where you collect the most.

If two or more of "your personal vehicles" are insured for the same coverage, the coverage applies separately to each.

We reserve the right to make payment for repair or replacement of damaged property with property of like kind and quality, including parts supplied by a source other than the manufacturer of the vehicle such as aftermarket, used, recycled, rebuilt, or exchanged parts.

**If There Is Other Comprehensive, Collision or Physical Damage Coverage**
A. If "your personal vehicle" or an "owned" "topper", "slide-in camper" or "trailer" has other coverage on it:
   1. We will pay only our share of the "loss". Our share is the proportion that our coverage amount bears to the total of all applicable coverage amounts.
   2. Any insurance we provide with respect to a "non-owned vehicle", non-owned "topper", "slide-in camper", or "trailer", or any vehicle used as a "temporary substitute vehicle" shall be excess over any other collectible insurance. However, any insurance we provide for such "non-owned vehicle" or "temporary substitute vehicle" will be primary insurance if the vehicle is insured under a policy affording coverage to a "vehicle business". This applies only if an "insured":
      a. Is operating the vehicle; and
      b. Is neither the "person" engaged in such "business" nor that "person's" employee or agent.

B. Any insurance we provide for a "newly owned vehicle" does not apply if there is similar coverage on the "newly owned vehicle".

## Additional Definitions

Under the Damage to Your Vehicle Module, the definitions in the General Section and the Glossary in the Vehicle Section apply. If a word is defined in more than one location, the definition in this module takes precedence for the coverages described in this module. The definitions are expanded as follows:

**"Collision"**
Your "personal vehicle" upsets, hits or gets hit by a vehicle or other object.

**"Common Equipment"**
"Common equipment" usual to use with "your personal vehicle" includes:

A. For an "auto", equipment which is factory or dealer installed, and is usual to an "auto" of the private passenger, panel truck, pickup truck, farm truck, farm truck tractor or van type including, but not limited to aftermarket rims, roll bars, cattle catchers, and spoilers.

   This does not include customizing features, accessories, or equipment unless you have told us about them before the "loss" and have paid any additional premium required.

B. For a pickup truck, a flatbed that is usual to an "auto" of the pickup truck type and is permanently attached to the pickup truck.

   This does not include customizing features or optional equipment including but not limited to hitches, toolboxes, external tanks, or machinery, unless you have notified us of those features before the "loss" and have paid any additional premium required.

C. For a "motorhome", equipment which is factory or dealer installed, and is usual to an "auto" of the private passenger or truck type plus equipment and accessories built into and forming a permanent part of the "motorhome", including appliances, furniture and equipment furnished by the manufacturer or dealer as original equipment.

D. For a "motorcycle", equipment which is factory or dealer installed, and is usual to a "motorcycle". A sidecar is not included unless it is specifically indicated in the Declarations.

E. For a "snowmobile", equipment which is factory or dealer installed, and is usual to a "snowmobile", including a "snowmobile sled".

F. For a "watercraft", equipment which is factory or dealer installed, and is usual to the use of the "watercraft", including an electric trolling motor, and for:
   1. An inboard powered boat, its attached equipment and any rudder, propeller, shaft, or machinery inside or outside the boat;
   2. An inboard/outboard powered boat, its attached equipment;
   3. An outboard boat, its remote controls and other attached equipment; or
   4. A sailboat, its sails, spars, rigging and other attached equipment.

   This does not include equipment and accessories consisting of extra fuel tanks, miscellaneous portable and detachable equipment and accessories "owned" by you for the operation of the "watercraft", unless you have told us of the items before the "loss" and have paid any additional premium required.

   We do not cover fuel, provisions, cameras, portable sound or electronic equipment, fishing equipment, water skis or other sporting equipment for any "watercraft".

**"Loss"**
A direct and accidental loss of or damage to any property covered by this module.

**"Non-Owned Vehicle"**
A "personal vehicle" that is not:

A. "Owned" by;
B. Registered in the name of; or
C. Furnished or available for the regular or frequent use of,

you or any resident of your household.

"Slide-In Camper"
A removable camper designed to be carried in a pickup bed.

"Topper"
A removable shell or cover used over the bed of a pickup to enhance the capacity or security of the pickup's cargo.

## Additional Exclusions

Under the Damage to Your Vehicle Module, the Exclusions in the General Section apply and are expanded as follows:

### Compact Discs Or Tapes

There is no coverage for "loss" of compact discs, DVDs, tapes or other mediums for recording or reproducing sound or video.

### Controlled Substances

There is no coverage while any property covered under this module is being used in unlawful manufacture, trade or transportation of Controlled Substances as defined by the Federal Food and Drug Act at 21 U.S.C.A. Sections 811 and 812.

This exclusion does not apply if such property covered under this module is stolen and the unlawful activity is beyond the control of you or any "household member".

### Gradual or Sudden Loss

There is no coverage for any "loss" "arising out of" wear and tear, freezing, mechanical or electrical breakdown, or road damage to tires. This exclusion does not apply to Emergency Roadside Assistance Coverage, or if there is a theft of the entire vehicle.

### Non-Owned Vehicles

There is no coverage for "non-owned vehicles" while:

A. Being repaired, serviced or used by any "person" while that "person" is working in any "vehicle business"; or
B. Used in any other business or occupation.

This does not apply to a "personal vehicle" driven or "occupied" by you or any "household member".

### Sound or Electronic Equipment

There is no coverage for "loss" by theft of a compact disc player or changer, tape player or recorder, citizens or commercial band radio, radio transmitter, transceiver, telephone, scanning monitor receiver, radar detector, DVD player, or any electronic device incorporating such equipment.

This does not apply if the equipment is permanently installed in the opening of the dash, console or trunk of the vehicle normally reserved by the manufacturer of the "personal vehicle" for the installation of such sound or electronic equipment.

### Tires

There is no coverage for tires unless stolen, or damaged by fire or vandalism, or other "loss" covered by this module happens at the same time.

### Transportation Network Company Service

There is no coverage for any "loss" to any vehicle while being used or available to carry "persons" or property for a charge, fee, or donation, or in cooperation with a "Transportation Network Company" in a "ride sharing" program under the terms of an oral, written, or electronic agreement. This includes but is not limited to the period of time:

Period 1 - When a driver is logged onto an internet-enabled application or platform used by a "Transportation Network Company" to arrange transportation services.

Period 2 - When a driver has accepted a "ride sharing" request or is en route to provide "ride sharing" services.

Period 3 - When a passenger or property is "occupying" the vehicle as part of a "ride sharing" service.

### Vehicle Sharing
There is no coverage for any "loss" to any vehicle while being used in a "vehicle sharing" program by anyone other than "you" or any "household member".

### Vehicles Used For A Fee
There is no coverage for any "loss" to any vehicle while being used to carry people or property for a fee. This exclusion does not apply to a shared-expenses car pool or a motor vehicle used in the course of volunteer work for a tax-exempt organization as described in A.R.S. 43-1201, paragraph 4.

### Watercraft
There is no coverage for "loss" "arising out of" the unseaworthiness of the boat.

## Additional Conditions
The following conditions apply in addition to those in the General Section.

### Limitation for Inboard Boat Machinery
Coverage for "loss" to any rudder, propeller, shaft or machinery inside or outside the inboard boat indicated in the Declarations will not be included under any payment for "loss" unless "caused by" fire, explosion, collision with another boat or by sinking as the result of a collision with an object.

### Limitation for Prior Damage
Coverage for prior damage to "your personal vehicle" as indicated in the Declarations will not be included under any payment for "loss".

### Loss Payee
A. If a loss payee is named in the Declarations for a specific vehicle, we may pay any "loss" to:
   1. You and, if unpaid, the repairer; or
   2. You and the loss payee, as each of your interests is determined, when we find it is not practical, or you choose not to, repair your vehicle; or
   3. The loss payee, as to the loss payee's interest if your vehicle has been repossessed.

B. When we pay the loss payee for "loss" for which you are not covered, we are entitled to the loss payee's right of recovery against you to the extent of our payment. Our right of recovery shall not impair the loss payee's right to recover the full amount of the "loss" payee's claim.

## Optional Coverages
You have these optional coverages only if specifically named in the Declarations for a particular vehicle indicated in the Declarations. Except as otherwise stated, these optional coverages are subject to the provisions of the General Section, Vehicle Section and this module.

### Emergency Roadside Assistance
In the event of a disablement, we will pay for our authorized service representative to provide:
- towing of "your auto" or "your motorcycle" to the nearest qualified repair facility; and
- labor costs on "your auto". The labor must be done at the place of disablement.

The amount indicated in the Declarations for the applicable vehicle is the most we will pay for any one covered disablement.

If you incur covered expenses for disablement services that were not performed by or facilitated through our authorized service representative, we will reimburse you for the service provider's reasonable and customary charges, as determined by us, up to the applicable limit shown in the Declarations. Receipts for covered expenses must be submitted to us for consideration of reimbursement.

We will pay no more than five disablements per policy period for each vehicle showing Emergency Roadside Assistance coverage in the Declarations.

No deductible applies to this optional coverage.

Auto Rental Reimbursement

A. We will pay costs incurred by you when you rent an "auto", use a taxi, or use public transportation due to a covered "loss" to "your auto" under Comprehensive or Collision Coverages, starting when:
   1. It cannot run due to the covered "loss"; or
   2. If it can run, you leave it at the shop for agreed repairs; and
B. Ending when:
   1. It has been repaired or replaced; or
   2. We offer to pay for the covered "loss";

   whichever comes first.
C. The Each Occurrence amount indicated in the Declarations for the applicable vehicle is the most we will pay for Auto Rental Reimbursement Coverage incurred in any one "occurrence". In no event will the amount we pay for expenses incurred on any one day exceed the per day amount shown in the Declarations, and in no event will we pay for expenses incurred for more than 30 days.
D. Any payment under Auto Rental Reimbursement Coverage is reduced to the extent it is payable under Comprehensive Coverage.
E. No deductible applies to this optional coverage.

Motorhome Rental Reimbursement and Expenses

A. We will pay costs incurred by you when you rent an "auto" or "motor home", use a taxi, or use public transportation due to a covered "loss" to "your motor home" under Comprehensive or Collision Coverages starting when:
   1. It cannot run due to the covered "loss"; or
   2. If it can run, you leave it at the shop for agreed repairs; and
B. Ending when:
   1. It has been repaired or replaced; or
   2. We offer to pay for the covered "loss";

   whichever comes first.
C. If "your motor home" cannot run due to the covered "loss" and is more than 300 miles from your home, we will reimburse you for expenses incurred by you or any "household member" for:
   1. Commercial transportation fare to continue to your destination or home;
   2. Extra meals and lodging needed when the covered "loss" to "your motorhome" causes a delay enroute. The expenses must be incurred between the time of the covered "loss" and:
      a. The time you arrive at your destination or home; or
      b. The end of the third day;

      whichever occurs first; or
   3. Meals, lodging and commercial transportation fares incurred by you or a "person" you choose to drive "your motorhome" from the place of repair to your destination or home.
D. The Each Occurrence amount indicated in the Declarations for the applicable vehicle is the most we will pay for Motorhome Rental Reimbursement and Expenses Coverage incurred by all "persons" in any one "occurrence". In no event will the amount we pay for expenses incurred on any one day exceed the per day amount shown in the Declarations, and in no event will we pay for expenses incurred for more than 10 days.
E. No deductible applies to this optional coverage.

**Auto – Theft of Special Electronic Equipment**

A. If indicated in the Declarations, we cover "loss" due to theft from "your auto" of the following special equipment:
   1. Tape Player. This includes any compact disc player or changer, tape player or recorder;
   2. CB Radio. This includes any citizens or commercial band radio, radio transmitter, transceiver, scanning monitor receiver, or any electronic device incorporating such equipment;
   3. Radar Detector;

4. Telephone;
5. Television;
6. DVD player; and
7. All Other. This includes any other special electronic equipment.

B. We also cover "loss" to any accessories or specialized antennas for use with equipment listed above if incurred in conjunction with "loss" to equipment covered under this policy. This does not include compact discs, DVDs, recording tape, record discs or other mediums.

C. Coverage is provided for the above property only if:
1. You or a "household member" own the property;
2. The property is capable of being operated by power from the electrical system of "your auto"; and
3. The "loss" occurs while such equipment is in or upon "your auto".

D. Our limit of insurance for all covered "loss" directly attributable to a single "occurrence" shall not exceed the lesser of:
1. The "actual cash value"; or
2. The amount indicated in the Declarations for this coverage.

E. No deductible applies to this optional coverage.

**Auto – Compact Discs/Stereo Tapes**

A. We cover "loss" to compact discs, DVDs, tapes, records, discs or other medium for use with any device or instrument designed for the recording, reproduction, or recording and reproduction of sound or video provided they are owned by you or a "household member" and:
1. They are in or upon "your auto" insured for Collision Coverage and the "loss" is "caused by" a collision; or
2. They are in or upon "your auto" insured for Comprehensive Coverage or Comprehensive Without Glass Coverage.

B. Our liability for a covered "loss" to all compact discs, DVDs, tapes, records discs or other medium "caused by" any one "occurrence" shall not exceed the limit of insurance indicated in the Declarations for this coverage.

C. No deductible applies to this optional coverage.

**Loan/Lease Gap Coverage**

In the event of a covered "loss" to an "auto" which has been declared a total "loss" by us and Loan/Lease Gap Coverage is indicated in the Declarations for that "auto", we will pay any unpaid amount due on the loan or lease remaining after settlement of the "actual cash value", subject to the limitations listed below.

The following will not be included in payment of Loan/Lease Gap Coverage:

A. The amount paid or payable for "loss" to the "auto" under Comprehensive or Collision Coverage and any deductible that applies to the "loss";
B. Overdue loan or lease payments due at the time of "loss" and any penalties or fees associated with those overdue payments;
C. Penalties or fees charged under a lease for excessive use, abnormal wear and tear or high mileage;
D. Carry-over balances from any previous loans or leases;
E. Salvage value if you retain the salvage;
F. Security deposits not refunded by a lessor;
G. All refunds paid or payable to you as a result of the early termination of a financed warranty or extended service agreement on your "auto"; or
H. The dollar amount of any unrepaired damage which occurred prior to the total "loss" to your "auto".

We will declare the "auto" a total "loss" when the cost to repair or replace that "auto" or its parts with like kind and quality plus the salvage value exceeds that "auto's" "actual cash value" at the time of the "loss".

We will pay no more than 25% of the "actual cash value" of the "auto" at the time of the "loss" under this coverage.

Motorhome or Trailer Personal Effects

We cover "loss" to your personal effects provided that at the time of "loss":

A. They are in or upon "your motorhome", "your trailer" or the "slide-in camper" indicated in the Declarations and insured for Collision Coverage and the "loss" is "caused by" a collision; or

B. They are in or upon "your motorhome", "your trailer" or the "slide-in camper" indicated in the Declarations and insured for Comprehensive Coverage or Comprehensive Without Glass Coverage.

Our liability for a covered "loss" to all personal effects shall not exceed the limit of insurance indicated in the Declarations for this coverage.

# Auto Uninsured And Underinsured Motor Vehicle Module

This module is part of the Vehicle Section. The provisions in this module, combined with the provisions in the General Section and the Vehicle Section provide the uninsured and underinsured motor vehicle coverages you selected.

Coverage under this module applies to an "occurrence" happening in the United States of America, its territories and possessions or Canada, including their coastal waters, or while the insured vehicle is being shipped between their ports. There is no coverage outside these geographical areas.

## Uninsured and Underinsured Motor Vehicle Coverages

You have the following coverages only to the extent that they are indicated in the Declarations.

### Uninsured Motor Vehicle Coverage

We cover damages for "bodily injury" an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle". The "bodily injury" must be sustained by an "insured", "caused by" an "occurrence" and "arise out of" the operation, maintenance or use of the "uninsured motor vehicle".

We are not bound by any judgment against any "person" or organization if "suit" was filed without notice to us.

### Underinsured Motor Vehicle Coverage

We cover damages for "bodily injury" an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle". The "bodily injury" must be sustained by an "insured", "caused by" an "occurrence" and "arise out of" the operation, maintenance or use of the "underinsured motor vehicle".

We are not bound by any judgment against any "person" or organization if "suit" was filed without notice to us.

There is no coverage until the limits of liability of all "bodily injury" liability bonds and policies that apply have been used up by payments of judgments or settlements.

## Who Is An Insured

Within this module, an "insured" is defined as:

A. You;
B. Any "household member";
C. Any other "person" while "occupying":
   1. "your auto", "your farm truck", "your farm truck tractor";
   2. a "newly owned auto";
   3. a "temporary substitute auto"; or
   4. a "trailer" attached to any "auto" listed above; or
D. Any other "person" entitled to recover damages because of "bodily injury" to an "insured" under A., B. or C. above.

## Notification Of Loss

In case of an accident, "occurrence" or loss to which this insurance may apply, refer to the General Section and this module for specific notification of loss instructions.

### Uninsured Motor Vehicle Coverage and Underinsured Motor Vehicle Coverage

The "person" making claim shall also:

A. Report a hit-and-run accident to the police and to us as soon as reasonably possible;
B. Let us inspect the insured vehicle the "person" "occupied" at the time of the "occurrence";

C. Send us at once a copy of all legal papers relating to any claim or "suit" to which this coverage applies;
D. Give us all details about the death, injury, treatment, medical reports and other information we need to determine the amount payable; and
E. Be examined by physicians chosen and paid by us as often as we may reasonably request. If the "person" making claim is deceased or otherwise unable to act, his or her legal representative shall authorize us to obtain all medical reports and records.

## Payment For Loss

The Payment For Loss provisions in the General Section apply and are expanded as follows with respect to coverage provided by this module.

### Payment of Amount Due

We will pay the amount due under this module to:
A. The "insured";
B. A parent or guardian if the "insured" is a minor or an incompetent "person";
C. The surviving spouse of a deceased "insured"; or
D. A "person" authorized by law to receive such payment.

### Limits of Insurance

A. When you have purchased split limits of liability as indicated in the Declarations for the applicable vehicle, our limit of coverage is as follows:
   1. The Uninsured Motor Vehicle Coverage or Underinsured Motor Vehicle Coverage limit for each "person" is the maximum we will pay as damages for "bodily injury" to one "person" in one accident.
   2. The Uninsured Motor Vehicle Coverage or Underinsured Motor Vehicle Coverage limit for each accident is subject to the each "person" limit and is the maximum we will pay as damages for "bodily injury" to two or more "persons" in one accident.
B. If you have purchased a combined single limit of liability as indicated in the Declarations for the applicable vehicle, our limit of coverage for all damages resulting from any one accident is the limit indicated for Uninsured Motor Vehicle Coverage or Underinsured Motor Vehicle Coverage. The most we will pay is the lesser of:
   1. The difference between the amount of the "insured's" damages for "bodily injury", and the amount paid to the "insured" by or for any "person" or organization who is or may be held legally liable for the "bodily injury" including all sums paid for the same damages under the Vehicle Liability Module or Auto Medical Payments Module; or
   2. The limits of the applicable coverage.
C. We will pay no more than the split limits or combined single limit indicated in the Declarations, regardless of the number of:
   1. Vehicles or "persons" insured; or
   2. Claims, claimants, policies or vehicles involved in the accident.
D. The coverage limits provided to protect against damages "caused by" accidents with "uninsured motor vehicles" and "underinsured motor vehicles" are to be applied separately. However, this does not increase the total limit of insurance available for these coverages.
E. No "person" will be entitled to receive duplicate payments for the same elements of any loss.
F. Any payment made to a "person" under this module will reduce any amount payable to that "person" under the Vehicle Liability Module or Auto Medical Payments Module provided that such reduction does not prevent the "person" from receiving full compensation for their "bodily injury".
G. An "auto" and attached "trailer" are one vehicle. Therefore, the limits are not increased.
H. When two or more "autos" are insured under this module the limits apply separately to each and cannot be stacked, added together or combined to determine the amount of insurance available to an injured person from one accident.

### Other Insurance

With respect to "bodily injury", if there is other applicable uninsured motor vehicle insurance or underinsured motor vehicle insurance, any insurance we provide for a vehicle you do not own shall be excess over other collectible insurance.

If two or more uninsured/underinsured motorist liability policies issued to you by us apply to the

same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

Arbitration
A. If we and an "insured" do not agree:
   1. Whether an injured "person" is legally entitled to recover damages under this coverage; or
   2. As to the amount of damages
   Either party may make a written demand for arbitration.
B. In this event, each party will select a competent and impartial arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.
C. Each party will:
   1. Pay the expenses it incurs; and
   2. Bear the expenses of the third arbitrator equally.
D. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to the procedure and evidence will apply.
E. The written decision of any two arbitrators shall be binding on each party as to:
   1. Whether the "insured" is legally entitled to recover damages; and
   2. The amount of damages. However, this only applies if the amount does not exceed the minimum limit for "bodily injury" liability specified by the financial responsibility law of the state of Arizona. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

## Payment Recovery
Uninsured Motor Vehicle Coverage Underinsured Motor Vehicle Coverage
We have the right to recover payments made under this coverage from any liable party.

The "person" to or for whom we have made payment shall:
A. Not hurt our right to recover;
B. Execute any legal papers we need (including assignments or "suit" papers); and
C. When we ask, take action through our representative to recover our payments.

## Additional Definitions
Under this module, the Definitions in the General Section and the Additional Definitions in the Vehicle Section apply. If a word is defined in more than one location, the definition in this module takes precedence for the coverages described in this module. The definitions are expanded to include the following:

"Newly Owned Auto"
An "auto" newly "owned" by you, which you tell us about within 30 days of its purchase date and:
A. It is a "personal auto" which replaces your "personal auto" indicated in the Declarations;
B. It is an added "personal auto" and all other insured "personal autos" of the same vehicle type "owned" by you are insured by us or one of our affiliates or subsidiaries;
C. It is an added "personal auto" newly "owned" by an unmarried resident of your household who does not own an "auto", is under 21 and is related to you by blood, marriage, guardianship or adoption, and all other insured "personal autos" "owned" by you are insured by us or one of our affiliates or subsidiaries; or
D. It is a pickup, panel truck or van that replaces "your personal auto" and is used in a business or occupation, other than farming or ranching, for carrying tools or related items to, from, or between job sites. Because of its business use, insurance must be obtained under a commercial auto policy within 30 days of its acquisition.

"Personal Auto"
Any of the following:
A. An "auto" of the private passenger type designed solely to carry "persons" and their luggage;
B. An "auto" of the pickup, panel truck, van or "motor home" type not customarily used in any business or occupation for:
   1. Delivery of products or supplies, unless for farming or ranching;

2. Carrying of tools or equipment, unless for farming or ranching;
3. Hauling for hire; or
4. Office, store or display purposes;

C. An "auto" of the truck type, including a truck tractor type, "owned" by a farmer or rancher and used exclusively in connection with their farming or ranching operation, for exchange purposes with neighbors or for personal pleasure.

"Temporary Substitute Auto"
An "auto" not "owned" by you if it replaces "your personal auto" for a short time. Its use has to be with the consent of the owner. "Your personal auto" has to be out of use due to its breakdown, repair, servicing, damage or loss. A "temporary substitute auto" is not considered a "non-owned vehicle".

"Uninsured Motor Vehicle"
A. Includes any of the following:
   1. A land motor vehicle or trailer the ownership, maintenance or use of which is not insured or bonded for "bodily injury" liability at the time of the accident;
   2. A land motor vehicle insured or bonded for "bodily injury" liability at the time of the accident but:
      a. The insuring company denies coverage or at the time of the accident is or becomes insolvent; or
      b. Its limit of "bodily injury" liability is less than the minimum limit for "bodily injury" liability specified by law; or
   3. A hit-and-run land motor vehicle whose owner or driver remains unknown and which causes an accident resulting in "bodily injury" to an "insured" with or without striking:
      a. The "insured"; or
      b. The vehicle the "insured" is "occupying".
      c. The facts of the accident must be:
         i. Reported, as required by law, to the proper law enforcement authorities; and
         ii. Corroborated by additional and confirming testimony, fact or evidence that strengthens and adds weight or credibility to the insured's representation of the accident.

B. An "uninsured motor vehicle" does not include a land motor vehicle, trailer or equipment:
   1. "Owned" or operated by a self-insurer within the meaning of any motor vehicle financial responsibility, motor carrier or similar law;
   2. Designed for use mainly off public roads except while on public roads;
   3. While located for use as a residence or premises; or
   4. Operated on rails or crawler treads.

"Underinsured Motor Vehicle"
A land motor vehicle or trailer, the ownership, maintenance or use of which is insured or bonded for "bodily injury" liability coverage in amounts which are less than the damages for "bodily injury" sustained by the "insured".

An "underinsured motor vehicle" does not include any "uninsured motor vehicle" or a land motor vehicle, trailer or equipment:

A. "Owned" or operated by a self-insurer within the meaning of any motor vehicle financial responsibility, motor carrier or similar law;
B. Designed for use mainly off public roads except while on public roads;
C. While located for use as a residence or premises; or
D. Operated on rails or crawler treads.

## Additional Exclusions

Under this module, Exclusions in the General Section apply and are expanded as follows:

**Consent**
If a "person" claiming or receiving payment under this module takes any action without our consent which adversely affects our right to recover our payments, coverage shall be reduced to the extent that we have been prejudiced. This includes settlements made and judgments obtained without our consent.

Duplicate Coverage
There is no coverage for underinsured motor vehicle coverage if uninsured motor vehicle coverage applies to the accident.

Government
There is no coverage to the extent it directly or indirectly affects any government body.

Nonpermissive Use
There is no coverage under this module for "bodily injury" sustained by any "person" using a vehicle without a reasonable belief that the driver is entitled to do so.

Transportation Network Company Service
There is no coverage for "bodily injury" "arising out of" the use of any vehicle while being used to carry "persons" for a charge, fee, or donation, or in cooperation with a "Transportation Network Company" in a "ride sharing" program under the terms of an oral, written, or electronic agreement. This includes but is not limited to the period of time:

Period 2 - When a driver has accepted a "ride sharing" request or is en route to provide "ride sharing" services.

Period 3 - When a passenger is "occupying" the vehicle as part of a "ride sharing" service.

This exclusion does not apply to Period 1, in which a driver is logged onto an internet-enabled application or platform used by a "Transportation Network Company" to arrange "ride sharing" services but has not yet accepted a "ride sharing" request.

Vehicle Sharing
There is no coverage under this module for the use of any vehicle while being used in a "vehicle sharing" program. This exclusion does not apply while the vehicle is being operated by you or any "household member".

Vehicle Used for a Fee
There is no coverage for "bodily injury" of an "insured" while "occupying" an "owned" "auto" or "trailer" which is used to carry people or property for a fee as a public or livery conveyance or in the business primarily to transport property or equipment. This exclusion does not apply to a shared-expense car pool or a motor vehicle used in the course of volunteer work for a tax-exempt organization as described in A.R.S 43-1201, paragraph 4.

# EXHIBIT 2

FARM BUREAU
FINANCIAL SERVICES

Farm Bureau Life Insurance Company*
Western Agricultural Insurance Company*
Farm Bureau Property & Casualty Insurance Company*

February 27, 2026

CHRISTOPHER GROMEK
1793 W SAN ANGELO ST
GILBERT, AZ 85233

RE: Insured: CHRISTOPHER GROMEK
Loss Date: 10/17/2025
Claim Number: B198104P00

Dear CHRISTOPHER GROMEK:

We have received notice of your automobile accident. Farm Bureau Financial Services was first notified of this auto accident on 10/17/2025. We must make you aware of a recent development in the law that impacts your Underinsured and Uninsured motor vehicle coverage.

- **NOTICE CONCERNING SELECTION OF POLICY LIMIT**
  - You purchased either multiple policies insuring at least one vehicle or a single policy insuring multiple vehicles issued by Farm Bureau Property & Casualty Company or Western Agricultural Insurance Company.
  - If you make a claim for either Uninsured Motorist or Underinsured Motorists benefits arising from the above accident, then only one vehicle's Underinsured Motorist or Uninsured Motorists coverage limit will apply to the claim, regardless of the number of applicable policies, applicable coverages, vehicles insured, persons injured, or number of claims asserted.
  - Pursuant to Arizona Revised Statute § 20-259.01(H), you have the right to select the one vehicle's Underinsured Motorist or Uninsured Motorists coverage limit to apply to the above accident.
- *If you make no selection within 30 days, you will have selected the vehicle with the highest limits of insurance.*

Sincerely,

Scott Harmon
Farm Bureau Financial Services
Farm Bureau Property & Casualty Insurance Company
Western Agricultural Insurance Company
PO Box 9168, Des Moines, IA 50306-9168
Phone: (480) 431-2977 | Fax: (480) 431-2977
Email: Scott.Harmon@fbfs.com


Securities & services offered through FBL Marketing Services, LLC* 877.860.2904, Member SIPC | Advisory services offered through FBL Investment Management Services, Inc*
*Affiliates *Company providers of Farm Bureau Financial Services